Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
T: 202.542.7200
E: jpizzirusso@hausfeld.com

*Interim Class Counsel for Plaintiffs*

Jill M. Manning (SBN 178849)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
T: 415.433.9000
E: jmanninng@pwfirm.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| *IN RE: POST MEDS, INC. DATA BREACH LITIGATION* | Case No. 4:23–cv–05710-HSG |
| | Hon. Haywood S. Gilliam, Jr. |
| This Documents Relates To:<br>All Actions | **PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date: October 24, 2024<br>Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor (Oakland) |

i

## NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR
## PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT

PLEASE TAKE NOTICE that on October 24, 2024 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr., in Courtroom 2 of the United States District Court for the Northern District of California (Oakland Division), located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Richard Reed, Frankie Garcia, Michael Siegel, Linda Johnson, David MacDonald, Lasedrick Toles, John Rossi, Michael Thomas, Marissa Porter, Angela Morgan, Benjamin Fisher, Brittany Hallman, Russell Autry, Jacob Benjamin, Victoria Phillips, Christopher Williams, David Sauceda, James Lowery, Hal Evans, Charles Byrd, Vanessa Wilson, Daniel Cohen, Mayra Mendez, and Meliza Moran (collectively, "Plaintiffs"), will, and hereby do, move for entry of an Order in accordance with Federal Rule of Civil Procedure 23:

(1)     granting preliminary approval of the concurrently filed proposed Class Action Settlement Agreement and Release;

(2)     finding that, for purposes of effectuating the proposed Settlement Agreement and Release, the prerequisites for class certification under Federal Rule of Civil Procedure 23(a) are likely to be found satisfied;

(3)     approving the Parties' proposed Notice Plan and forms of Notice;

(4)     appointing Plaintiffs as Class Representatives for the Settlement Class;

(5)     maintaining the Court's prior appointment of Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman PLLC and James J. Pizzirusso of Hausfeld LLP as Interim Co-Lead Class Counsel and Jill M. Manning of Pearson Warshaw, LLP as Interim Liaison Counsel (collectively, "Interim Class Counsel") [Dkt. 76];

(6)     scheduling a Final Fairness Hearing before the Court; and

(7)     granting such other and further relief as this Court deems just and proper.

This Motion is supported by the Memorandum of Points and Authorities set forth below; the Settlement Agreement and Release, and all exhibits thereto; the Joint Declaration of Gary M. Klinger and James J. Pizzirusso; the Declaration of Jill M. Manning; the Declaration of Cameron

R. Azari; the [Proposed] Preliminary Approval Order; the pleadings and records on file in this action; and such other matters and argument as the Court may consider at the hearing of this Motion.

Dated: September 13, 2024

Respectfully submitted,

*/s/ Gary M. Klinger*
Gary M. Klinger (*Pro Hac Vice*)
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

*/s/ James J. Pizzirusso*
James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
T: 202.542.7200
E: jpizzirusso@hausfeld.com

*/s/ Jill M. Manning*
Jill M. Manning
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
T: 415.433.9000
E: jmanning@pwfirm.com

*Interim Class Counsel for Plaintiffs*

iii

Gary M. Klinger
**MILBERG COLEMAN BRYSON**
**PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
T: 202.542.7200
E: jpizzirusso@hausfeld.com

*Interim Class Counsel for Plaintiffs*

Jill M. Manning (SBN 178849)
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
T: 415.433.9000
E: jmanninng@pwfirm.com

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| *IN RE: POST MEDS, INC. DATA BREACH LITIGATION*<br><br>This Documents Relates To:<br>All Actions | Case No. 4:23-cv-05710-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR PRELIMINARY APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

1

## TABLE OF CONTENTS

TABLE OF CONTENTS.......................................................................................................... v

TABLE OF AUTHORITIES ................................................................................................... vi

INTRODUCTION .................................................................................................................... 1

BACKGROUND ...................................................................................................................... 2

TERMS OF THE SETTLEMENT AGREEMENT .................................................................. 3

LEGAL STANDARDS ............................................................................................................ 7

ARGUMENT ........................................................................................................................... 9

I.    The Settlement Merits Preliminary Approval ................................................................. 9

  A.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation............................................................................................. 9

  B.    The Risk of Maintaining Class Action Status Through Trial ........................................ 10

  C.    The Amount Offered in Settlement............................................................................. 10

  D.    The Extent of Discovery Completed and the Stage of the Proceedings ...................... 14

  E.    The Experience and Views of Counsel ....................................................................... 15

  F.    The Presence of a Governmental Participant and the Reaction of the Class ................. 16

  G.    The Proposed Notice Plan is Appropriate ................................................................... 16

II.   Certification of the Settlement Class is Appropriate ...................................................... 19

  A.    Rule 23(a) Is Satisfied................................................................................................ 19

  B.    Rule 23(b)(3) Is Satisfied ........................................................................................... 21

III.  The Court Should Appoint the Named Plaintiffs as Class Representatives and Appoint Interim Class Counsel as Class Counsel for the Certified Class ........................................... 23

IV.   Proposed Schedule for Final Fairness Hearing.................................................................. 24

CONCLUSION..................................................................................................................... 25

# TABLE OF AUTHORITIES

*Cases*                                                                                       *Page(s)*

*Adkins v. Facebook, Inc.*,
    424 F. Supp. 3d 686 (N.D. Cal. 2019) ...................................................................13

*Adlouni v. UCLA Health Systems Auxiliary*,
    BC589243 (Cal. Super. Ct.)...............................................................................19

*In re Ambry Genetics Data Breach Litig.*,
    567 F. Supp. 3d 1130 (C.D. Cal. 2021) ...............................................................12

*Amchem Prods., Inc. v. Windsor*,
    521 U.S. 591 (1997).......................................................................................19, 22

*In re Anthem, Inc. Data Breach Litig.*,
    15-MD-02617-LHK, 2018 WL 3872788 (N.D. Cal. Aug. 15, 2018).....................23

*In re Anthem, Inc. Data Breach Litig.*,
    327 F.R.D. 299 (N.D. Cal. 2018).........................................................................15

*Archer v. United Rentals, Inc.*,
    195 Cal. App. 4 807, 816 (2011) .........................................................................13

*Astiana v. Kashi Co.*,
    291 F.R.D. 493 (S.D. Cal. 2013) (Huff, J.)......................................................20, 21

*Atkinson et al. v. Minted, Inc.*,
    No. 3:20-cv-03869 (N.D. Cal.) ............................................................................19

*Barbosa v. Cargill Meat Sols. Corp.*,
    297 F.R.D. 431 (E.D. Cal. 2013) .........................................................................23

*Beck-Ellman v. Kaz USA, Inc.*,
    283 F.R.D. 558 (S.D. Cal. 2012) .........................................................................20

*Brink v. First Credit Res.*,
    185 F.R.D. 567 (D. Ariz. 1999) ..........................................................................19

*In re Brinker Data Incident Litig.*,
    No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508 (M.D. Fla. Apr. 14, 2021),
    *vacated in part sub nom. Green-Cooper v. Brinkler Int'l, Inc.*, 73 F.4th 883
    (11th Cir. 2023).....................................................................................13, 20, 22

*Browning v. Yahoo! Inc.*,
    No. 04-cv-01463-HRL, 2007 WL 4105971 (N.D. Cal. Nov. 16, 2007).................14

*Campbell v. Facebook Inc.*,
    No. 13-CV-05996-PJH, 2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*,
    951 F.3d 1106 (9th Cir. 2020) .......................................................................................... 10

*Capps v. Law Offices of Peter W. Singer*,
    No. 15-cv-02410-BAS(NLS), 2016 WL 6833937 (S.D. Cal. Nov. 21, 2016) ................ 11, 17

*Cervantez v. Celestica Corp.*,
    No. EDCV 07-729-VAP, 2010 WL 2712267 (C.D. Cal. July 6, 2010) ................................ 14

*Choi v. Mario Badescu Skin Care, Inc.*
    (2016) 248 Cal. App. 4th 292 ........................................................................................... 19

*Cochran et al. v. The Kroger Co.*,
    No. 5:21-cv-01887 (N.D. Cal.) ......................................................................................... 18

*Coopers v. Lybrand & Livesay*,
    437 U.S. 463 (1978) ......................................................................................................... 10

*Corona v. Sony Pictures Ent'mt, Inc.*,
    No. 14-cv-09600-RGK (C.D. Cal. 2016) ........................................................................... 11

*Craft v. County of San Bernardino*,
    624 F. Supp. 2d 1113 (C.D. Cal. 2008) ............................................................................... 7

*Diaz v. Google LLC*,
    No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) ........................................................ 10

*Ellis v. Costco Wholesale Corp.*,
    657 F.3d 970 (9th Cir. 2011) ............................................................................................ 19

*In re Emulex Corp. Sec. Litig.*,
    210 F.R.D. 717 (C.D. Cal. 2002) ...................................................................................... 23

*In re Experian Data Breach Litig.*,
    No. 8:15-cv-01592 (C.D. Cal.) ......................................................................................... 18

*Fox v. Iowa Health Sys.*,
    399 F. Supp. 3d 780 (W.D. Wis. 2019) .............................................................................. 12

*Freeman v. ABC Legal Servs., Inc.*,
    877 F. Supp. 2d 919 (N.D. Cal. 2012) ............................................................................... 13

*Gaston, et al., v. FabFitFun*,
    No. 2:20-cv-09534-RGK (C.D. Cal.) ................................................................................ 18

*In re Google Inc. St. View Elec. Comm'ns Litig.*,
    21 F.4th 1102 (9th Cir. 2021) ............................................................................................. 5

*In re Google LLC St. View Elec. Commc'ns Litig.*,
  No. 10-MD-02184-CRB, 2020 WL 1288377 (N.D. Cal. Mar. 18, 2020) .............................10

*In re Google Plus Profile Litig.*,
  No. 5:18-cv-06164-EJD-VKD, 2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ........................11

*Hanlon v. Chrysler Corp.*,
  150 F.3d 1011 (9th Cir. 1998) .................................................................................20, 21, 22

*Hart v. Colvin*,
  No. 15-cv-00623-JST, 2016 WL 6611002 (N.D. Cal. Nov. 9, 2016)..............................7, 8, 9

*In re Hyundai and Kia Fuel Economy Litig.*,
  926 F.3d 539 (9th Cir. 2019) .................................................................................................7

*Just Film, Inc. v. Buono*,
  847 F.3d 1108 (9th Cir. 2017) .............................................................................................22

*Koenig, et al. v. Lime Crime, Inc.*,
  No. CV 16-503 (C.D. Cal.) ...................................................................................................18

*In re LDK Solar Sec. Litig.*,
  255 F.R.D. 519 (N.D. Cal. 2009) .........................................................................................21

*In re LinkedIn User Priv. Litig.*,
  309 F.R.D. 573 (N.D. Cal. 2015) ....................................................................................11, 23

*Low v. Trump Univ., LLC*,
  246 F. Supp. 3d 1295 (S.D. Cal. 2017).................................................................................18

*In re Marriott Int'l, Inc., Customer Data Sec. Breach Litig.*,
  341 F.R.D. 128 (D. Md. 2022)..............................................................................................13

*McDonald, et al. v. Kiloo A/S, et al.*,
  No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021) ................................................................10

*National Rural Telecommunications Coop. v. DIRECTV, Inc.*,
  221 F.R.D. 523 (C.D. Cal. 2004) ...........................................................................................9

*Officers for Justice v. Civil Serv. Comm'n*,
  688 F.2d 615 (9th Cir. 1982) .............................................................................................7, 8

*In re Online DVD-Rental Antitrust Litig.*,
  779 F.3d 934 (9th Cir. 2015) .................................................................................................8

*Perkins v. LinkedIn Corp.*,
  2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ........................................................................11

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD-2633 ........................................................................................................13

*In re Premera Blue Cross Customer Data Sec. Breach Litig.*,
  No. 3:15-MD-2633-SI, 2019 WL 3410382 (D. Or. July 29, 2019)........................................23

*Rannis v. Recchia*,
  380 F. App'x 646 (9th Cir. 2010) ..........................................................................................19

*Regents v. Univ. of California v. Superior Ct.*
  (2013) 220 Cal. App. 4th 549 ................................................................................................12

*Riker v. Gibbons*,
  No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012 (D. Nev. Oct. 28, 2010) ......................15

*Smith v. Triad of Ala., LLC*,
  No. 1:14-CV-324-WKW, 2017 WL 1044692 (M.D. Ala. Mar. 17, 2017), *aff'd
  on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017) ....................................22

*Staton v. Boeing Co.*,
  327 F.3d 938 (9th Cir. 2003) ....................................................................................................8

*Sullivan v. DB Invs., Inc.*,
  667 F.3d 273 (3d Cir. 2011)....................................................................................................19

*In re Tableware Antitrust Litig.*,
  484 F. Supp. 2d 1078 (N.D. Cal. 2007) ..................................................................................11

*Tyson Foods, Inc. v. Bouaphakeo*,
  577 U.S. 442 (2016)................................................................................................................22

*Van Bronkhorst v. Safeco Corp.*,
  529 F.2d 943 (9th Cir. 1976) ....................................................................................................7

*Vigil v. Muir Med. Grp. IPA, Inc.*,
  84 Cal. App. 5th 197 (2022) ..................................................................................................12

*In re: Vizio, Inc., Consumer Privacy Litigation*,
  No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017).......................................................11

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
  MDL No. 2672 CRB (JSC), 2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)............................9

*Wal-Mart Stores, Inc. v. Dukes*,
  564 U.S. 338 (2011)................................................................................................................22

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir.), *cert. denied*, 544 U.S. 1044 (2005)....................................................17

*Warner v. Toyota Motor Sales, U.S.A., Inc.*,
  No. CV152171FMOFFMX, 2016 WL 8578913 (C.D. Cal. Dec. 2, 2016) ...........................17

*In re Yahoo! Inc. Customer Data Sec. Breach Litig.*,
  No. 16-MD-02752-LHK, 2020 WL 4212811 (N.D. Cal. July 22, 2020),
  *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021)......................23

**Statutes**

Cal. Const. Art. 1, § 1 .............................................................................................................3

California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* ....................................2, 11

California Evidence Code § 1152 ...........................................................................................14

California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ..........................2, 12

Class Action Fairness Act, 28 U.S.C. § 1715(b) ....................................................................16

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2,
  *et seq.* ..............................................................................................................................3, 12

Medical Information Act, Cal. Civ. Code § 56, *et seq.*............................................................2, 11

**Other Authorities**

Federal Rule of Civil Procedure 23 ...................................................................... *passim*

Federal Rule of Evidence 408..............................................................................................14

Treasury Regulation § 1.468B-1 ............................................................................................4

**INTRODUCTION**

Following mediation and extensive settlement negotiations, the Parties present the Court with a proposed Settlement Agreement and Release (the "Settlement Agreement"), annexed hereto as **Exhibit 1**, which resolves Plaintiffs' claims against Defendant PostMeds, Inc. d/b/a TruePill ("Defendant" or "PostMeds") in the above-captioned litigation. If approved, the Settlement Agreement will establish a non-reversionary cash fund of $7,500,000.00 (the "Settlement Fund"),[1] which will be used to (1) make direct cash payments to Settlement Class Members, (2) provide data protection and monitoring services to participating Settlement Class Members, (3) cover Notice and Administrative Expenses, (4) pay Service Awards to Class Representatives, if any, as approved by the Court, and (5) pay Attorneys' Fees and Expenses, as approved and awarded by the Court. As part of the settlement negotiations, Interim Class Counsel received assurances that PostMeds implemented a number of business practice changes and security enhancements to prevent future data security incidents. PostMeds provided further assurances, supported by the signed declaration of its Chief Executive Officer, that the Private Information compromised and exfiltrated in the Data Breach was deleted from the threat actor's servers.

The Settlement Agreement provides substantial relief to the Settlement Class and its terms are well within the range of reasonableness and consistent with applicable law, particularly considering the substantial risks and uncertainties of further, protracted litigation. The Settlement Agreement is the product of well-informed, arm's-length negotiations, facilitated by an experienced mediator. Accounting for the substantial risks and uncertainties of continued litigation of this case, the Settlement Agreement is a fair and reasonable result that delivers tangible and immediate benefits to all Settlement Class Members, and therefore merits this Court's Preliminary Approval.[2]

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as those defined in Section II of the Settlement Agreement and Release. *See* **Exhibit 1**, § 2, ¶¶ 9-52.

[2] PostMeds does not oppose the relief sought by this Motion for Preliminary Approval and agrees that the Court should grant preliminary approval and allow notice to issue to the Settlement Class. By not opposing this relief, PostMeds does not concede the factual basis for any claim and denies liability.

**BACKGROUND**

PostMeds is an online pharmacy company that fulfills mail-order prescriptions.[3] Plaintiffs and Settlement Class Members are current and former PostMeds customers whose personally identifiable and protected health information ("Private Information") was compromised and exposed due to a breach of PostMeds' internal network (the "Data Breach"). On or about August 31, 2023, PostMeds "discovered that a bad actor gained access to a subset of files used for pharmacy and fulfillment services."[4] Following an investigation, PostMeds concluded that "the bad actor accessed the files between August 30, 2023 and September 1, 2023."[5] The Private Information compromised and exposed in the Data Breach included, without limitation: patient names, contact information, demographic information, dates of birth, Social Security numbers, diagnosis information, treatment information, prescription information, medical record numbers, provider names, dates of service, and health insurance information, which PostMeds collected and maintained. PostMeds subsequently confirmed that approximately 2,004,848 individuals were impacted by the Data Breach. *See* Joint Declaration of Gary M. Klinger and James J. Pizzirusso ("Joint Decl."), annexed hereto as **Exhibit 2**, ¶¶ 5-7.

Plaintiffs commenced the above-captioned class action in the United States District Court for the Northern District of California on November 6, 2023. The operative Consolidated Class Action Complaint (Dkt. 82) (the "Complaint") alleges the following causes of action: negligence; breach of implied contract; unjust enrichment/quasi contract; invasion of privacy — intrusion upon seclusion; violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"); violations of the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"); violations of the California Customer Records Act, Cal. Civ. Code

---

[3] *Your digital pharmacy partner*, POSTMEDS, https://www.truepill.com/ (last accessed Sept. 6, 2024).

[4] *Notice of a Data Security Incident*, POSTMEDS, https://www.documentcloud.org/documents/24171378-postmedstruepill-data-breach-notice (last accessed Sept. 6, 2024) (the "Notice Letter").

[5] *Id.*

§§ 1798.80, *et seq.* ("CRA"); invasion of privacy – Cal. Const. Art. 1, § 1; and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA").

The Parties engaged in extensive, arm's-length negotiations over the course of many months, including a full-day mediation session with Mediator Jill. R. Sperber of Judicate West. *See* Joint Decl. ¶ 16. In advance of the mediation session, the Parties prepared and exchanged comprehensive mediation briefs. *Id.* ¶ 15. Before any settlement terms were negotiated, Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of PostMeds' anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses in this matter. *Id.* ¶¶ 9-14.

The Parties commenced mediation with Mediator Sperber on May 3, 2024, with both sides represented by experienced counsel. Joint Decl. ¶ 16. The Parties were unable to reach a settlement at the mediation but continued to work toward resolving the litigation through extensive settlement negotiations over the following four months. *Id.* ¶ 18. The Parties reported to the Court on June 10, 2024 that they were working on drafting a term sheet memorializing a settlement agreement (Dkt. 89, ¶ 6), and reached an understanding in principle regarding certain terms on June 25, 2024. Joint Decl. ¶ 19. The Parties also collaborated on the logistics and substance of the Notice Plan. *Id.* ¶ 20. Interim Class Counsel spent hours negotiating and obtaining bids from three well-established, experienced, and highly regarded class action administration firms. *Id.* ¶¶ 20-22. As a result, Plaintiffs maximized the amount that would be available to the Class for payment of claims, by minimizing notice and administration costs, while ensuring that the notice and administration plan complied with all rules, guidelines, and due process requirements. *Id.*

## TERMS OF THE SETTLEMENT AGREEMENT

The proposed Settlement Class is defined as:

> All U.S. residents who were sent notice that their Private Information was potentially compromised as a result of the Data Incident experienced by PostMeds, Inc. d/b/a TruePill ("PostMeds" or "Defendant"), on or about October 30, 2023.

1
2
3
4
5

> Excluded from the Settlement Class are: (1) the judge presiding over the Litigation, and members of their direct family, (2) Defendant, its subsidiaries, parent companies, successors, predecessors, and any entity in which the Defendant or Defendant's parent companies have a controlling interest and their current or former officers and directors, and (3) Settlement Class Members who submit a valid Request for Exclusion prior to the Opt-Out Deadline.

6    **Exhibit 1**, § II, ¶ 44. The proposed Settlement Class covers approximately 2 million

7    individuals whose Private Information was compromised in the Data Breach, and parallels the

8    class definitions suggested in Plaintiffs' Complaint, but it does so through a single nationwide

9    class rather than a series of state-wide classes. *See* Dkt. 82. Consistent with their notice

10   requirements under law, PostMeds confirmed to Plaintiffs and Interim Class Counsel that they

11   have already notified individuals whose Private Information was impacted by the Data Breach.

12   Joint Decl. ¶ 13 n.6. Accordingly, the foregoing definition contained in the Settlement Agreement

13   accurately identifies members of the Settlement Class.

14   The Settlement Agreement provides for a non-reversionary cash fund of $7,500,000.00.

15   **Exhibit 1**, § II, ¶ 48. The Settlement Fund will be used to pay: (1) Notice and Administrative

16   Expenses, (2) Fees and Expenses, as approved and awarded by the Court, (3) Service Awards, if

17   any, as approved and awarded by the Court, (4) Documented Out-of-Pocket Losses, (5) Pro-Rata

18   Cash Compensation, and (6) Financial Shield Services. **Exhibit 1**, § III, ¶ 56.[6] The Settlement is

19   designed to exhaust the Settlement Fund. To the extent there are any residual funds following the

20   preceding payments, if economically feasible and practical, such funds will be distributed *pro rata*

21   to Settlement Class Members. **Exhibit 1**, § II, ¶ 41. If such additional distribution is not

22   economically feasible and practical given the funds remaining, or if an additional distribution is

23
24
25

26   _____

27   [6] *See also* **Exhibit 1**, § III, ¶ 54 (Because the Settlement Fund is a "qualified settlement fund," within the meaning of Treasury Regulation § 1.468B-1, the income earned on the Settlement Fund is taxable. All Taxes and Tax Expenses (such as expenses of tax attorneys and/or accountants) shall be paid from the Settlement Fund.).

28

made and there are funds remaining after that, any residual funds will be distributed by mutual agreement of the Parties to a Court-approved *cy pres* recipient.[7]

The Settlement provides a straightforward claims process by which Settlement Class Members may obtain an award from the Settlement. All Settlement Class Members may submit claims for compensation for out-of-pocket losses and either a cash fund payment or one year of data protection and monitoring services. **Exhibit 1**, § IV, ¶ 58. Settlement Class Members may receive compensation of up to $4,000.00 for documented out-of-pocket monetary losses incurred as a result of the Data Breach. *Id.* ¶ 58 (i). Regardless of whether they make a claim for out-of-pocket losses, all Settlement Class Members are eligible to make a claim for a cash payment, and *pro rata* cash payments will evenly distribute the net amount of the Settlement Fund. *Id.* ¶ 58 (ii). In lieu of a cash payment, Settlement Class Members may make a claim for one year of data protection and monitoring services from Privacy Shield. *Id.* ¶ 58 (iii). Participating Settlement Class Members will have the option of receiving Settlement Payments via mailed check or other electronic means made available by the Settlement Administrator. *Id.* ¶ 49. Additionally, Class Representative Plaintiffs may seek Service Awards not to exceed $1,500.00 each in recognition of their time and service to the Settlement Class, subject to the Court's approval. Any such amounts awarded by the Court shall be paid from the Settlement Fund. **Exhibit 1**, § II, ¶ 42; *id.* § III, ¶ 56.

As further consideration to the Settlement Class, Interim Class Counsel received assurances that PostMeds made numerous changes to their business practices related to data

---

[7] *See* **Exhibit 1**, § II, ¶ 41 ("While it is not anticipated that there will be any residual funds after the *pro rata* Cash Fund payments are made (which will have the practical effect of 'sweeping' all the Net Settlement Funds into *pro rata* payments for valid claimants), residual funds will be redistributed to the Class on a *pro rata* basis until it is uneconomical to do so. The funds remaining in the Settlement Fund after settlement payments have been distributed and the time for reissuing checks has expired will be Remainder Funds. The Remainder Funds will be sent to one or more Court-approved charitable organization(s) as a *cy pres* distribution. The Parties will jointly recommend the entity or entities to the Court that will be the recipient(s) of the *cy pres* distribution."); *see also In re Google Inc. St. View Elec. Comm'cns Litig.*, 21 F.4th 1102, 1115 (9th Cir. 2021) (settlement's distribution of common fund to *cy pres* recipients did not render it inadequate where distribution directly to class members would be "prohibitively costly").

security to prevent future data breaches and protect their customers' Private Information. *See* **Exhibit 1**, § IV, ¶ 66; Joint Decl. ¶ 25. PostMeds has agreed to provide additional information regarding the specifics of the changes implemented to Interim Class Counsel upon request.[8] **Exhibit 1**, § IV, ¶ 66.

In exchange for the monetary and non-monetary benefits provided under the Settlement Agreement, Settlement Class Members will release any and all claims against PostMeds and the Released Parties arising from or in any way related to the Data Breach at issue in this litigation. *See* **Exhibit 1**, § VIII, ¶ 80. The release in the Settlement Agreement is tailored to the claims that have been pleaded or could have been pleaded in this case. There are no differences between the claims released under the Settlement Agreement and the claims alleged in Plaintiffs' Complaint. *Id.*; *see also* Joint Decl. ¶ 25.

The Parties jointly propose Epiq Class Action & Claims Solutions, Inc. ("Epiq") to serve as the Settlement Administrator, subject to the Court's approval. Joint Decl. ¶ 22. The Notice Plan and plan for claims processing estimates that Notice and Administrative Expenses will total approximately $498,547.00. *Id.* ¶ 23. This estimate is based on the Notice Plan set forth in the Declaration of Cameron R. Azari in Support of Settlement Notice Plan ("Azari Decl."), annexed hereto as **Exhibit 3**. Prior to selecting Epiq, the Parties obtained bids from three (3) different claims administrators. Joint Decl. ¶ 20. Following careful review of the competing bids, counsel determined that Epiq's bid was most favorable to the Class and negotiated with Epiq to secure the current bid price.[9] *Id.* ¶ 21. The estimated costs are reasonable and fair given the size of the Class and claims in this case. *Id.* ¶ 23. Epiq maintains insurance to cover any errors, and has taken necessary precautions to protect Settlement Class Members' Private Information. *Id.*; *see also* Azari Decl. ¶¶ 12-18. Interim Class Counsel will submit an application with their opening papers

---

[8] Plaintiffs do not place a monetary value on these assurances as "injunctive relief" for purposes of evaluating the Settlement, but believe PostMeds' promises of business practice changes to protect data in the future provides additional benefit to the Class.

[9] Interim Class Counsel's history of engagements with Epiq over the past two years is detailed in **Exhibit A** to the Joint Declaration.

in support of final approval of the Settlement Agreement for: (a) an award of attorneys' fees to be paid from the Settlement Fund not to exceed one-third (1/3) of the Settlement Fund for fees;[10] and (b) an award for reimbursement of reasonable case costs and expenses actually incurred, in addition to any attorneys' fee award. **Exhibit 1**, § IX, ¶ 83.[11] Interim Class Counsel's maximum expense figure is based on their current expenses and estimates of future expenses that will be incurred between the filing of the present Motion and the filing of Interim Class Counsel's application for an award of attorneys' fees and expenses. Unless otherwise ordered by the Court, such fees and expenses shall be paid from the Settlement Fund, in the amount approved by the Court, no later than seven (7) days after the Effective Date. *Id.*

The Settlement Agreement is fair, adequate, and reasonable, particularly in light of the substantial risks and uncertainties of further, protracted litigation of this matter. Accordingly, Plaintiffs request that the Court grant their Motion for Preliminary Approval, order distribution of Notices to the Settlement Class, and set a date and time for a Final Fairness Hearing pursuant to Federal Rule of Civil Procedure 23(e)(2).

## LEGAL STANDARDS

The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926 F.3d 539, 556 (9th Cir. 2019); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615, 625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943 (9th Cir. 1976) ("[T]here is an overriding public interest in settling and quieting litigation," and this is "particularly true in class action suits."). "'The initial decision to approve or reject a settlement proposal is committed to the sound discretion of the trial judge.'" *Hart v. Colvin*, No. 15-cv-00623-JST, 2016 WL 6611002, at

---

[10] While Interim Class Counsel are still collecting all counsel's lodestar and have yet to audit the time to ensure efficiency, all Plaintiffs' Counsel's lodestar currently totals over $400,000.00 and Interim Class Counsel anticipate it will continue to rise as the settlement progresses. Joint Decl. ¶ 72.

[11] The possible award of attorneys' fees is common and reasonable in class action litigation. *See Craft v. County of San Bernardino*, 624 F. Supp. 2d 1113, 1117 (C.D. Cal. 2008) (finding 25% of common fund to be a benchmark for attorneys' fees).

*4 (N.D. Cal. Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)).

In the context of a class settlement, the Court must determine whether the settlement is "fundamentally fair, adequate and reasonable" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d 938, 959 (9th Cir. 2003) (citation omitted). Pursuant to the 2018 Amendments to Rule 23, the Court's task at the preliminary approval stage is to determine whether it will likely be able to grant final approval. *See* Rule 23(e)(2); *cf. Hart*, 2016 WL 6611002, at *5 (finding proposed settlement was within range of approvability) (citing *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007)). "The proposed settlement must be 'taken as a whole, rather than the individual component parts' in the examination for overall fairness." *Id.* (quoting *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1026 (9th Cir. 1998)).

To assess the fairness of a class settlement, courts in the Ninth Circuit consider:

> (1) the strength of the plaintiffs' case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*In re Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015) (quoting *Churchill Vill., L.L.C. v. G.E.*, 361 F.3d 566, 575-76 (9th Cir. 2004)). "[T]he very essence of a settlement is compromise, 'a yielding of absolutes and an abandoning of highest hopes.'" *Officers for Justice*, 688 F.2d at 624 (citation omitted). "The proposed settlement is [thus] not to be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* at 625. "Preliminary approval of a settlement is appropriate if 'the proposed settlement appears to be the product of serious, informed, non-collusive negotiations, has no obvious deficiencies, does not improperly grant preferential treatment to class representatives or segments of the class, and falls within the range of possible approval.'" *Hart*, 2016 WL 6611002, at *5 (quoting *Tableware*, 484 F. Supp. 2d at 1079). "The proposed settlement need not be ideal, but it must be fair and free of

collusion, consistent with counsel's fiduciary obligations to the class." *Id.* (citing *Hanlon*, 150 F.3d at 1027).

**ARGUMENT**

I.      **The Settlement Merits Preliminary Approval**

A.      **The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Further Litigation**

While Plaintiffs are confident in the strength of their claims and that the Court would certify a Class, PostMeds is also confident in its defenses and arguments against class certification. Plaintiffs believe their liability case is strong and that class certification is warranted, but also acknowledge that there are risks, including whether the Court would grant class certification, deny a motion for summary judgment filed by PostMeds, and whether a jury would find liability and award damages. Even if Plaintiffs obtained class certification, successfully opposed a motion for summary judgment, and subsequently proved liability at trial, they still would face the significant risk of recovering nothing for the Class because the fact and amount of damages are uncertain. During mediation, PostMeds raised non-frivolous arguments as to its duty to Class Members, as well as negligence and breach of its duties to Plaintiffs and Class Members. Settlement Class Members thus face the risk, expense, and delay of a potentially lengthy appeal even after a successful trial, holding up any recovery for Settlement Class Members for several more years. The Settlement Agreement, by contrast, provides tangible and immediate relief for all Settlement Class Members.

Accordingly, "Plaintiffs' strong claims are balanced by the risk, expense, and complexity of their case, as well as the likely duration of further litigation." *In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2016 WL 6248426, at *11 (N.D. Cal. Oct. 25, 2016). "Settlement is favored in cases [such as this one] that are complex, expensive, and lengthy to try." *Id.* (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009)); *see also National Rural Telecommunications Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 526 (C.D. Cal. 2004) ("The Court shall consider the vagaries of litigation and compare the

9

significance of immediate recovery by way of the compromise to the mere possibility of relief in the future, after protracted and expensive litigation.") (citation omitted). Thus, the litigation risks and potential for substantial delay support approval of the Settlement Agreement here.

### B. The Risk of Maintaining Class Action Status Through Trial

A district court's order granting class certification under Federal Rule of Civil Procedure 23 is "inherently tentative" and "subject to revision," and PostMeds could move for de-certification at any time before trial. *Coopers v. Lybrand & Livesay*, 437 U.S. 463, 469 n.11 (1978). A denial or reversal of class certification, like a loss on the merits, would effectively extinguish any hope of recovery by the Settlement Class. Even if Plaintiffs were to obtain class certification, they would continue to face the risk of losing on summary judgment or at a jury trial. And even if Plaintiffs prevailed at trial, any judgment or order granting class certification could be reversed on appeal and, even if Plaintiffs prevailed on appeal, the appellate process would delay any recovery to the Settlement Class, possibly for years.

### C. The Amount Offered in Settlement

Privacy damages are particularly uncertain and numerous privacy class actions have been settled for non-monetary relief. *See, e.g.*, *Campbell v. Facebook Inc.*, No. 13-CV-05996-PJH, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, No. 10-MD-02184-CRB, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021), Dkt. 406 (granting final approval of 16 injunctive relief-only settlements in related privacy class

actions accusing defendants of violating child privacy protection laws by collecting and selling PII of children).

Here, the Settlement Agreement provides for a non-revisionary Settlement Fund of $7,500.000.00, a substantial monetary benefit to the Settlement Class. "As explained by the Supreme Court: '[n]aturally, the agreement reached normally embodies a compromise; in exchange for the saving of cost and elimination of risk, the parties each give up something they might have won had they proceeded with litigation.'" *Capps v. Law Offices of Peter W. Singer*, No. 15-cv-02410-BAS(NLS), 2016 WL 6833937, at *8 (S.D. Cal. Nov. 21, 2016) (quoting *United States v. Armour & Co.*, 402 U.S. 673, 681 (1971)).

The size of the Settlement Fund ($7.5 million) in relation to the size of the Settlement Class (approximately 2 million Class Members) compares favorably to other class action settlements alleging violations of privacy and security. *See, e.g.*, *In re Google Plus Profile Litig.*, No. 5:18-cv-06164-EJD-VKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litigation*, No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Corona v. Sony Pictures Ent'mt, Inc.*, No. 14-cv-09600-RGK (C.D. Cal. 2016) ($4.5 million settlement fund ($2 million non-reversionary; $2.5 million reversionary) for 435,000 class members in data breach case); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users); *Perkins v. LinkedIn Corp.*, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (granting final approval of $13 million settlement where the class size was approximately 20.8 million).

In evaluating the adequacy of a proposed class settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *Tableware*, 484 F. Supp. 2d at 1080. Here, Plaintiffs allege statutory claims under the California Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"), the California Customer

Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* ("CRA"), the California Unfair Competition Law, Cal. Bus. & Prof. Code §17200, *et seq.* ("UCL"), and the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA"). Plaintiffs additionally allege common law claims for negligence, breach of implied contract, unjust enrichment, and invasion of privacy.

### ***Statutory Claims***

PostMeds has represented to Interim Class Counsel that the Settlement Class includes approximately 315,000 California residents. Joint Decl. ¶ 13 n.6. If Plaintiffs were successful on their CMIA claim, and the jury awarded the maximum statutory damages, full recovery of $1,000 would potentially reach $315 million dollars. But a jury could also award only nominal damages under the CMIA, yielding only $1.00 per California Class Member. PostMeds raised arguments during mediation disputing their liability under the CMIA and challenging the statute's applicability in the data breach context.[12] Accordingly, Plaintiffs' expected recovery on their CMIA claim is far from certain.

Plaintiffs' recovery under their CRA and ICFA[13] claims—which require proof of actual damages arising from fraud, identity theft, or out-of-pocket expenses—is also uncertain and difficult to value, because the vast majority of the Class has not experienced actual economic or personal injury as a result of the Data Breach. *See Fox v. Iowa Health Sys.*, 399 F. Supp. 3d 780, 801 (W.D. Wis. 2019). Further, PostMeds would be expected to challenge Plaintiffs' statutory claims on the basis that they involve individualized questions about the extent to which each particular Class Member's medical information was viewed or misused. *See Vigil v. Muir Med. Grp. IPA, Inc.*, 84 Cal. App. 5th 197, 220 (2022).

---

[12] *See, e.g.*, *In re Ambry Genetics Data Breach Litig.*, 567 F. Supp. 3d 1130, 1148 (C.D. Cal. 2021) ("'Disclosure' in [the CMIA] context 'refers to affirmative communicative acts—giving out medical information on a patient'"—not a data breach) (quoting *Sutter Health v. Superior Ct.* (2014) 227 Cal. App. 4th 1546, 1554)); *see also Regents v. Univ. of California v. Superior Ct.* (2013) 220 Cal. App. 4th 549, 564 ("'Disclose' . . . is an active verb, denoting in the context of CMIA and the protections afforded confidential medical information an affirmative act of communication.").

[13] PostMeds has represented to Interim Class Counsel that the Settlement Class includes approximately 69,000 Illinois residents. Joint Decl. ¶ 13 n.6.

For similar reasons, Plaintiffs' UCL claim primarily adds injunctive relief value to the present case as the only remedies available under that claim are restitution and injunctive relief. *Freeman v. ABC Legal Servs., Inc.*, 877 F. Supp. 2d 919, 923 (N.D. Cal. 2012) (recognizing it is well-established that in a UCL case recovery is limited to an injunction and restitution). As with Plaintiffs' other statutory claims, restitution here would be difficult to prove and value. *See Archer v. United Rentals, Inc.*, 195 Cal. App. 4 807, 816 (2011).

### ***Common Law Claims***

Plaintiffs' negligence, breach of contract, unjust enrichment, and invasion of privacy claims are even more difficult to value. To date, there have been no data breach cases tried to verdict, and only a handful of cases have achieved class certification. While class wide data breach damage models remain largely untested, the typical measure of damages proffered has been the market value of personal information based on black market rates for the types of data involved. *See, e.g.*, *In re Brinker Data Incident Litig.*, No. 3:18-cv-686-TJC-MCR, 2021 WL 1405508, at *3 (M.D. Fla. Apr. 14, 2021), *vacated in part sub nom. Green-Cooper v. Brinkler Int'l, Inc.*, 73 F.4th 883 (11th Cir. 2023) (denying *Daubert* challenge to expert using dark web average values as a methodology for calculating damages; *Adkins v. Facebook, Inc.*, 424 F. Supp. 3d 686, 694 (N.D. Cal. 2019) (same). Under the market theory approach, Settlement Class Members could recover between $2 and $25 per person for the compromise and exposure of their Social Security numbers in the Data Breach.[14] Using these values, full recovery for the Class would range between approximately $4,000,000 and $50,000,000. But again, PostMeds would be expected to challenge the viability of this damages model. *See In re Marriott Int'l, Inc., Customer Data Sec. Breach*

---

[14] *See* Megan Leonhardt, *Here's how much money hackers get for your Social Security Number and other info on the black market*, CNBC (Aug. 22, 2018), https://www.cnbc.com/2018/08/22/how-much-hackers-get-for-social-security-numbers-on-the-black-market.html (Social Security numbers selling from $2 - $25); *see also In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633, Motion for Class Certification, ECF No. 156, p. 20 (valuing Social Security numbers at $5).

*Litig.*, 341 F.R.D. 128, 153 (D. Md. 2022) (denying class certification on plaintiffs' market theory approach).

In light of the risks and uncertainties presented by data breach litigation, the $7,500,000.00 Settlement Fund achieved for the Settlement Class here is well within the range of possible approval. *See Browning v. Yahoo! Inc.*, No. 04-cv-01463-HRL, 2007 WL 4105971, at *10 (N.D. Cal. Nov. 16, 2007) ("[L]egal uncertainties at the time of settlement—particularly those which go to fundamental legal issues—favor approval."). For purposes of settlement negotiations, Interim Class Counsel estimated the total value of Plaintiffs' claims based on the foregoing analysis, including a review of previous settlements in similar data breach cases.[15] Based upon this comparison, their knowledge and experience, and an analysis of the facts and law applicable to Plaintiffs' claims and PostMeds' defenses, Interim Class Counsel believes the Settlement Agreement provides compensation to the Settlement Class that is fair, reasonable, and adequate.

**D.  The Extent of Discovery Completed and the Stage of the Proceedings**

The fact that the Parties have engaged in informal discovery "weighs in favor of the proposed settlement." *Cervantez v. Celestica Corp.*, No. EDCV 07-729-VAP (OPx), 2010 WL 2712267, at *3 (C.D. Cal. July 6, 2010). Prior to mediation, Plaintiffs submitted informal discovery requests to PostMeds pursuant to Federal Rule of Evidence 408 and California Evidence Code § 1152, requesting, *inter alia*, detailed information about the Data Breach, including PostMeds' investigation and assessment of the Data Breach, and documents sufficient to identify any remediation or corrective measures PostMeds took in response to the Data Breach. Joint Decl. ¶ 12. In response, PostMeds provided Plaintiffs with detailed information about the Class, including a breakdown by State of notices PostMeds sent to individuals impacted by the Data Breach, and a forensic report prepared by a third-party cybersecurity firm that performed an investigation into the nature, causes, and impacts of the Data Breach. *Id.* ¶ 13. PostMeds provided further details about corrective measures and security enhancements implemented in response to the Data Breach,

---

[15] A chart detailing comparable settlement outcomes is attached as **Exhibit B** to the Joint Declaration.

a copy of PostMeds' cyber insurance policy, and a transcript of negotiations between PostMeds and the threat actor that perpetrated the Data Breach. *Id.* PostMeds also provided assurances, supported by the signed declaration of its Chief Executive Officer, that the Private Information compromised and exfiltrated in the Data Breach was deleted from the threat actor's servers. *Id.* This work, combined with Interim Class Counsel's pre-suit investigation, provided Interim Class Counsel with sufficient knowledge to understand the strengths and weaknesses of Plaintiffs' claims and to fully evaluate the risks and uncertainties of future litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 320 (N.D. Cal. 2018) ("This exchange of information and progress in the litigation confirm that the parties have a good sense of the strength and weaknesses of their respective cases in order to 'make an informed decision about settlement.'") (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

**E.  The Experience and Views of Counsel**

"The recommendation of experienced counsel in favor of settlement carries a 'great deal of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*, No. 3:08-cv-00115-LRH-VPC, 2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (citing *In re Immune Response Sec. Litig.*, 497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of counsel is dependent on a variety of factors; namely, length of involvement in litigation, competence, experience in the particular type of litigation, and the amount of discovery completed.'" *Id.* at *4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions* §11:47 (4th ed. 2002)).

Plaintiffs and Settlement Class Members are represented by Gary M. Klinger of Milberg Coleman Bryson Phillips Grossman, PLLC ("Milberg"), James J. Pizzirusso of Hausfeld LLP ("Hausfeld"), and Jill M. Manning of Pearson Warshaw, LLP ("Pearson Warshaw") (collectively, "Interim Class Counsel"), among others. Mr. Klinger, Mr. Pizzirusso, and Ms. Manning are highly experienced in handling complex class actions similar to this litigation and have proven track records of experience, knowledge, and success in litigating complex litigation matters, including data breach cases. *See, e.g.*, Dkt. 17 (Plaintiffs' Motion to Appoint Interim Class Counsel); Joint

1  Decl. ¶¶ 37-69; Declaration of Jill M. Manning ("Manning Decl."), annexed hereto as **Exhibit 4**,

2  ¶¶ 1-6.

3    Interim Class Counsel have fully evaluated the available facts, applicable law, and

4  comparable settlements and have concluded that the proposed Settlement Agreement is fair,

5  reasonable, adequate, and beneficial to and in the best interests of Plaintiffs and the Settlement

6  Class, recognizing: (1) the existence of complex and contested issues of law and fact, (2) the risks

7  inherent in the litigation, (3) the likelihood that future proceedings will be unduly protracted and

8  expensive if the litigation is not settled by voluntary agreement, and (4) the magnitude of the

9  benefits derived from the proposed Settlement in light of both the maximum potential and likely

10  range of recovery to be obtained through further litigation and the expense thereof, as well as the

11  potential of no recovery whatsoever. Considering the risks and uncertainties of continued litigation

12  and all the factors bearing on the merits of settlement, Interim Class Counsel is satisfied that the

13  terms and conditions of the Settlement Agreement are fair, reasonable, adequate, and in their

14  respective best interests. *See* Joint Decl. ¶¶ 27-36.

15    **F.  The Presence of a Governmental Participant and the Reaction of the Class**

16    No governmental agency is involved in this litigation, but the Attorneys General of the

17  United States and of each State will be notified of the proposed Settlement Agreement in

18  accordance with the Class Action Fairness Act ("CAFA"), 28 U.S.C. § 1715(b), and will have an

19  opportunity to raise any concerns.

20    Given that the Class has not yet been notified of the Settlement Agreement and provided

21  an opportunity to submit a claim or object, Interim Class Counsel cannot yet report on the reaction

22  of the Settlement Class. Interim Class Counsel will provide this information to the Court prior to

23  the Final Fairness Hearing.

24    **G.  The Proposed Notice Plan is Appropriate**

25    "The court must direct notice in a reasonable manner to all Class Members who would be

26  bound by the proposal." Fed. R. Civ. P. 23(e)(1). Rule 23(c)(2) requires the Court to "direct to

27  Class Members the best notice that is practicable under the circumstances, including individual

28

notice to all members who can be identified through reasonable effort." Fed. R. Civ. P. 23(c)(2). "The standard for the adequacy of a settlement notice in a class action under either the Due Process Clause or the Federal Rules is measured by reasonableness." *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 113 (2d Cir. 2005), *cert. denied*, 544 U.S. 1044 (2005). "[T]he mechanics of the notice process are left to the discretion of the court subject only to the broad 'reasonableness' standards imposed by due process.'" *Capps*, 2016 WL 6833937, at *10 (quoting *Grunin v. Int'l House of Pancakes*, 513 F.2d 114, 120 (8th Cir. 1975)). "[N]otice is adequate if it may be understood by the average class member." *Warner v. Toyota Motor Sales, U.S.A., Inc.*, No. CV152171FMOFFMX, 2016 WL 8578913, at *14 (C.D. Cal. Dec. 2, 2016) (citation omitted).

The Settlement Agreement provides that Settlement Class Members will be provided the best possible opportunity to see, review and understand the Notice. The Notice Plan agreed to by the Parties and approved by Epiq includes individual, direct notice via email and U.S. Mail to all Settlement Class Members. **Exhibit 1**, § V, ¶ 67. PostMeds will provide the Settlement Administrator with the list of the names and physical addresses and, if available, email addresses, of all Settlement Class Members identified through its records. *Id.* Email notice will be sent to all identified Settlement Class Members for whom a valid email address is available ("Email Notice"). Azari Decl. ¶¶ 22-24. A double postcard notice, with a pre-addressed tear-off Claim Form, will be sent via United States Postal Service first class mail ("Postcard Notice") to all identified Settlement Class Members with an associated physical address for whom a valid email address is not available, or for whom the Email Notice is returned as undeliverable after several attempts. *Id.* ¶¶ 22, 25-27. The Email Notice and Postcard Notice will clearly describe the Settlement and the legal rights of the Settlement Class Members. *Id.* ¶¶ 22, 31. In addition, Notice will be disseminated via a digital campaign, through the Settlement Website. *Id.* The Notice forms are clear, concise, and informative. *Id.*; *see also* **Exhibit 1**, Exhibit B (Email Notice); Exhibit C (Long Form Notice); Exhibit E (Short Form Notice).

Epiq designed the Notice Plan to reach the greatest practicable number of Settlement Class Members based on its extensive prior experience and research into the notice issues particular to

this case. *See* Azari Decl. ¶¶ 11, 20.[16] Based on this analysis and its experience with similar notice efforts, Epiq expects that the Notice Plan's individual notice efforts via email or mail to identified Settlement Class Members will reach approximately 90% of the Settlement Class. *Id.* ¶ 20. The reach will be further enhanced by the Settlement Website. *Id.* ¶ 20, 28.

Rule 23(c)(2)(B), in relevant part, provides that the notice shall also apprise class members that "the court will exclude from the class any member who requests exclusion[, and] the time and manner for requesting exclusion." *See Low v. Trump Univ., LLC*, 246 F. Supp. 3d 1295, 1307 (S.D. Cal. 2017). A notice of a class member's right to opt out of a class action settlement must be "'of such nature as reasonably to convey the required information' regarding the window for class members to opt out of or remain in the class." *Low*, 881 F.3d at 1120 (citation omitted).

Here, the proposed Long Form Notice, attached to the Settlement Agreement as Exhibit C, will provide clear instructions to Settlement Class Members using language that is easy to understand regarding the procedures they must follow to opt out of the Settlement Class, including the deadline by which Settlement Class Members will be required to opt out. Prior to the date of the Final Approval Hearing, Interim Class Counsel will file with the Court an affidavit from the Settlement Administrator identifying those persons who have timely and validly excluded themselves from the Settlement. All Settlement Class Members who do not timely and validly opt out of the Settlement Class shall be bound by all terms of the Settlement.

Interim Class Counsel estimates a claims rate of approximately 2% to 5%, based on the realized claims rates of recent data breach class actions, including *Cochran et al. v. The Kroger Co.*, No. 5:21-cv-01887 (N.D. Cal.) (claims rate of 2.1%); *Gaston, et al., v. FabFitFun*, No. 2:20-cv-09534-RGK (C.D. Cal.) (claims rate of 5.3%); *In re Experian Data Breach Litig.*, No. 8:15-cv-01592 (C.D. Cal.) (claims rate of 2.9%); *Koenig, et al. v. Lime Crime, Inc.*, No. CV 16-503 (C.D.

---

[16] The various methods of notice proposed included direct mail, publication notice, and e-mail. Payment methods considered included checks and electronic payments. Interim Class Counsel believe that Epiq's current notice and payment proposal strikes a proper balance of ensuring that the Class receives sufficient notice and can easily make claims, while also ensuring that the notice costs do not disproportionately dilute the settlement fund. Joint Decl. ¶ 23.

Cal.) (claims rate of 2.87%); *Adlouni v. UCLA Health Systems Auxiliary*, BC589243 (Cal. Super. Ct.) (claims rate of 2.4%); *Atkinson et al. v. Minted, Inc.*, No. 3:20-cv-03869 (N.D. Cal.) (claims rate of 3.5%); *see also Choi v. Mario Badescu Skin Care, Inc.*, (2016) 248 Cal. App. 4th 292, 297 (noting "the typical consumer class action claim-rate of 5 percent"); *Sullivan v. DB Invs., Inc.*, 667 F.3d 273, 329 n. 60 (3d Cir. 2011) (noting claims rates in consumer class settlements "rarely" exceed 7%). Joint Decl. ¶¶ 32-33.

## II.    Certification of the Settlement Class is Appropriate

Under the terms of the Settlement Agreement, the Parties have agreed, for the purposes of the Settlement only, to the certification of the Settlement Class. Parties seeking class certification for settlement purposes must satisfy the requirements of Fed. R. Civ. P. 23. *Amchem Prods., Inc. v. Windsor*, 521 U.S. 591, 620 (1997). As set forth below, the requirements of Rules 23(a) and (b)(3) are satisfied here, and the Settlement Class should be certified for settlement purposes only.

### A.    Rule 23(a) Is Satisfied

#### 1.    *Numerosity*

Rule 23(a)(1) requires that a class must be "so numerous that joinder of all members is impracticable." Fed. R. Civ. P. 23(a)(1). "The requirement is met if, due to class size, it would be extremely difficult or inconvenient to join all class members." *Brink v. First Credit Res.*, 185 F.R.D. 567, 569 (D. Ariz. 1999). To this end, "courts [generally] find the numerosity requirement satisfied when a class includes at least 40 members." *Rannis v. Recchia*, 380 F. App'x 646, 651 (9th Cir. 2010). Here, the Settlement Class consists of more than 2 million individuals whose Private Information was compromised in the Data Breach. Numerosity is therefore satisfied.

#### 2.    *Commonality*

Rule 23(a)(2) requires "questions of law or fact common to the class." A single common question is sufficient. *See Ellis*, 657 F.3d at 981. Here, each claim of the Settlement Class turns on the question of whether PostMeds' security protocols were adequate to protect Settlement Class Members' Private Information. Analysis of this question begets interrelated questions that are also common across the Settlement Class, including what steps PostMeds took to identify and respond

to security threats, whether PostMeds complied with industry norms and applicable regulations (including under the Federal Trade Commission Act, the California Legal Remedies Act, the Rules of Professional Conduct, the California Consumer Privacy Act), and whether and when PostMeds knew or should have known of the Data Breach. Commonality is therefore satisfied. *See Brinker*, 2021 WL 1405508, at *8 (finding commonality requirement was met in data breach case where there were "several questions that are common to the class and capable of classwide resolution, including whether [the defendant] had a duty to protect customer data, whether [the defendant] knew or should have known its data systems were susceptible, and whether [the defendant] failed to implement adequate data security measures to protect customers' data").

### 3. *Typicality*

Rule 23(a)(3)'s typicality standard is permissive. "[C]laims are 'typical' if they are reasonably co-extensive with those of absent class members[.]" *Hanlon*, 150 F.3d at 1020. "[T]hey need not be substantially identical." *Id.*; *see also Astiana v. Kashi Co.*, 291 F.R.D. 493, 502 (S.D. Cal. 2013) (same) (Huff, J.). Here, Plaintiffs and Settlement Class Members were allegedly injured through PostMeds' singular pattern of misconduct. Plaintiffs' claims and legal theories, both in their individual and representative capacities, arise under this same factual predicate (i.e., the Data Breach). *See Beck-Ellman v. Kaz USA, Inc.*, 283 F.R.D. 558, 565 (S.D. Cal. 2012) (typicality satisfied "when each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendants' liability.").

The elements Plaintiffs must prove for their common law and statutory claims are identical to what Settlement Class Members must prove to establish PostMeds' liability. There are no defenses unique to Plaintiffs. Typicality is therefore met here. *See Brinker*, 2021 WL 1405508, at *8 (typicality met where "all Plaintiffs' injuries arise out of the same series of events, the Data Breach").

### 4. *Adequacy of Representation*

Rule 23(a)(4) requires that class representatives "fairly and adequately protect the interests of the class." Fed. R. Civ. P. 23(a)(4). A finding of adequacy involves a two-part inquiry: "(1) do

the named plaintiffs and their counsel have any conflicts of interest with other class members and (2) will the named plaintiffs and their counsel prosecute the action vigorously on behalf of the class?" *Hanlon*, 150 F.3d at 1020; *see also Astiana*, 291 F.R.D. at 503 (same). Here, Plaintiffs and Interim Class Counsel satisfy these inquiries.

First, Plaintiffs have no conflicts of interests with Settlement Class Members and "possess the same interest and suffer[ed] the same injury as the class members." *In re LDK Solar Sec. Litig.*, 255 F.R.D. 519, 532 (N.D. Cal. 2009). Here, Plaintiffs' and Settlement Class Members' claims flow from the same underlying conduct and all allegedly suffered the compromise and/or theft of their Private Information due to PostMeds' allegedly inadequate data security practices. Plaintiffs' and the Settlement Class's interests are therefore indisputably aligned. Further, each Plaintiff has demonstrated their unwavering commitment to the Settlement Class by: (i) actively participating in vigorous prosecution of the action; (ii) reviewing documents and pleadings in the case; and (iii) participating in meetings with their attorneys and regularly communicating with them regarding litigation strategy, the status of the litigation, and major developments. Plaintiffs' adequacy is therefore not subject to legitimate dispute.

Second, Interim Class Counsel are highly competent and have no conflicts of interest. They have vigorously prosecuted this action to date. Interim Class Counsel, as well as their firms, are experienced and sophisticated class action litigators that regularly prosecute and obtain significant victories for injured consumers, including in privacy and data breach cases. This Court previously adopted Plaintiffs' proposal designating this same slate of attorneys as Interim Class Counsel. *See* Dkts. 17, 76. Since their appointment, Interim Class Counsel have prosecuted this litigation with skill and zeal, including by conducting substantial pre-suit investigation, working with other Plaintiffs' counsel to consolidate these cases, engaging in informal discovery, and successfully mediating the case. There is no reason to doubt proposed Class Counsel's adequacy.

## B.  Rule 23(b)(3) Is Satisfied

"In addition to meeting the conditions imposed by Rule 23(a), the parties seeking class certification must also show that the action is maintainable under Fed. R. Civ. P. 23(b)(1), (2) or

(3)." *Hanlon*, 150 F.3d at 1022. Here, the Settlement Class is maintainable under Rule 23(b)(3), as common questions predominate over any questions affecting only individual members and class resolution is superior to other available methods for a fair and efficient resolution of the controversy. *Id.*; *see also Just Film, Inc. v. Buono*, 847 F.3d 1108, 1120 (9th Cir. 2017) ("The predominance analysis under Rule 23(b)(3) focuses on the relationship between the common and individual issues in the case, and tests whether proposed classes are sufficiently cohesive to warrant adjudication by representation.").

Here, Plaintiffs' claims depend, first and foremost, on whether PostMeds used reasonable data security to protect their Private Information. That question can be resolved using the same evidence for all Settlement Class Members, and thus is the precise type of predominant question that makes a class-wide adjudication worthwhile. *See Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 453 (2016) ("When 'one or more of the central issues in the action are common to the class and can be said to predominate, the action may be considered proper under Rule 23(b)(3)[.]'"). Thus, "[c]ommon questions that yield common answers" and are "apt to drive the resolution of this case predominate over any individual issues. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 345 (2011); *see also Brinker*, 2021 WL 1405508, at *14; *Smith v. Triad of Ala., LLC*, No. 1:14-CV-324-WKW, 2017 WL 1044692, at *13 (M.D. Ala. Mar. 17, 2017) (certifying negligence class in data-breach suit), *aff'd on reconsideration*, 2017 WL 3816722 (M.D. Ala. Aug. 31, 2017).

Importantly, predominance analysis in the settlement context need not consider manageability issues because "the proposal is that there be no trial," and hence manageability considerations are no hurdle to certification for purposes of settlement. *Amchem*, 521 U.S. at 620. There is only the predominant issue of whether PostMeds failed to properly secure the Private Information allegedly exposed in the Data Breach and failed to provide timely notice, such that individuals who were notified should now be provided a remedy. Resolution of that issue through individual actions is impracticable: the amount in dispute for individual Class Members is too small, the technical issues involved are too complex, and the required expert testimony and document review are too costly. *See Just Film*, 847 F.3d 1108 at 1123. Rather, the class device is

the superior method of adjudicating consumer claims arising from this Data Breach – just as in other data breach cases where class-wide settlements have been routinely approved. *See, e.g.*, *In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *6-7 (N.D. Cal. July 22, 2020), *appeal dismissed*, No. 20-17438, 2021 WL 2451242 (9th Cir. Feb. 16, 2021); *In re Premera Blue Cross Customer Data Sec. Breach Litig.*, No. 3:15-MD-2633-SI, 2019 WL 3410382, at *12-13 (D. Or. July 29, 2019); *In re Anthem, Inc. Data Breach Litig.*, 15-MD-02617-LHK, 2018 WL 3872788, at *11 (N.D. Cal. Aug. 15, 2018); *In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 585 (N.D. Cal. 2015).

### III.   The Court Should Appoint the Named Plaintiffs as Class Representatives and Appoint Interim Class Counsel as Class Counsel for the Certified Class

The Settlement Agreement would not have been possible had Plaintiffs not stepped forward to represent the interests of the Settlement Class. These proposed Class Representatives have consistently been involved in the litigation, providing valuable insight and useful facts and answering discovery, allowing Interim Class Counsel to effectively litigate this action, perform discovery, and negotiate this Settlement. *See* Joint Decl. ¶¶ 70-71. Plaintiffs regularly communicated with Interim Class Counsel regarding various issues pertaining to this case and will continue to do so until the Settlement is approved, and its administration completed. *Id.*

Likewise, Interim Class Counsel are well qualified to act as lead counsel for the Class and finalize a favorable settlement agreement for the Class. Interim Class Counsel have vigorously prosecuted this action and will continue to do so through final approval. Mr. Klinger, Mr. Pizzirusso, and Ms. Manning have acted as lead counsel in many cases and successfully settled multiple data breach class actions, such as this one. *See* Joint Decl. ¶¶ 37-69; Manning Decl. ¶¶ 1-6. *In re Emulex Corp. Sec. Litig.*, 210 F.R.D. 717, 720 (C.D. Cal. 2002) (evaluating adequacy of representation, a court may examine "the attorneys' professional qualifications, skill, experience, and resources . . . [and] the attorneys' demonstrated performance in the suit itself"); *Barbosa v. Cargill Meat Sols. Corp.*, 297 F.R.D. 431, 443 (E.D. Cal. 2013) ("There is no challenge to the

competency of the Class Counsel, and the Court finds that Plaintiffs are represented by experienced and competent counsel who have litigated numerous class action cases.").

The Court previously appointed proposed Class Counsel as Interim Class Counsel. *See* Dkt. 76 (appointing Mr. Klinger and Mr. Pizzirusso as Interim Co-Lead Counsel and Ms. Manning as Interim Liaison Counsel). Considering their work in this litigation, their collective expertise and experience in handling similar actions, and the resources they committed to representing the Class, Mr. Klinger, Mr. Pizzirusso, and Ms. Manning should be appointed Class Counsel for the proposed Settlement Class under Rule 23(g)(3) and confirmed under Rule 23(g)(1).

## IV.    Proposed Schedule for Final Fairness Hearing

The last step in the settlement approval process is to hold a Fairness Hearing at which the Court will hear argument and make a final decision about whether to approve the Settlement pursuant to amended Rule 23(e)(2). Specifically, Plaintiffs propose the following schedule:

| Event | Time for Compliance |
|---|---|
| Deadline to commence mailing and/or emailing of Notice (the "Notice Deadline") | Within 60 calendar days after entry of Preliminary Approval Order |
| Deadline to file memoranda in support of approval of the Settlement and in support of Class Counsel's application for an award of attorneys' fees and expenses and for Service Awards for Plaintiffs | Within 45 calendar days after the Notice Deadline |
| Deadline for submission of objections or exclusion requests ("Objection Deadline") | Within 60 calendar days after the Notice Deadline |
| Final Approval Hearing | Not less than 120 calendar days after the Notice Date, at the Court's convenience |
| Deadline for submission of Claim Forms ("Claims Deadline") | No later than 90 calendar days after the Notice Deadline |

Plaintiffs respectfully submit that this proposed schedule complies with Rule 23 and the Class Action Fairness Act, while securing recovery for Settlement Class Members in a timely fashion.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Preliminary Approval and enter an order substantially in the form of their Proposed Notice Order, which is annexed as Exhibit D to the Settlement Agreement.

Dated: September 13, 2024

*/s/  Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

*/s/ James J. Pizzirusso*
James J. Pizzirusso
**HAUSFELD LLP**
888 16th Street NW, Suite 300
Washington, DC 20006
T: 202.542.7200
E: jpizzirusso@hausfeld.com

*/s/ Jill M. Manning*
Jill M. Manning
**PEARSON WARSHAW, LLP**
555 Montgomery Street, Suite 1205
San Francisco, California 94111
T: 415.433.9000
E: jmanning@pwfirm.com

*Interim Class Counsel for Plaintiffs*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, Gary M. Klinger, hereby certify that I have obtained the concurrence in the filing of this document from all signatories listed above. I further attest that I have on file records to support this concurrence for subsequent production to the Court if so ordered or for inspection upon request.

Dated: September 13, 2024                         */s/ Gary M. Klinger*
                                                  Gary M. Klinger


**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on September 13, 2024, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

                                                  */s/ Gary M. Klinger*
                                                  Gary M. Klinger