James J. Pizzirusso
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
T: 202.540.7200
E: jpizzirusso@hausfeld.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
San Francisco, California 94111
Chicago, IL 60606
T: 866.252.0878
E: gklinger@milberg.com

*Class Counsel for Plaintiffs*

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| ***IN RE: POSTMEDS, INC. DATA BREACH LITIGATION***<br><br>This Documents Relates To:<br>*All Actions* | Case No. 4:23-cv-05710-HSG<br><br>Hon. Haywood S. Gilliam, Jr.<br><br>**PLAINTIFFS' NOTICE OF MOTION AND UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT**<br><br>Date: June 12, 2025<br>Time: 2:00 p.m.<br>Courtroom: 2 – 4th Floor (Oakland) |

**NOTICE OF PLAINTIFFS' UNOPPOSED MOTION FOR**
**<u>FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT</u>**

PLEASE TAKE NOTICE that on June 12, 2025 at 2:00 p.m., or as soon thereafter as the matter may be heard before the Honorable Haywood S. Gilliam, Jr., in Courtroom 2 of the United States District Court for the Northern District of California (Oakland Division), located at 1301 Clay Street, Oakland, CA 94612, Plaintiffs Richard Reed, Frankie Garcia, Michael Siegel, Linda Johnson, David MacDonald, Lasedrick Toles, John Rossi, Michael Thomas, Marissa Porter, Angela Morgan, Benjamin Fisher, Brittany Hallman, Russell Autry, Jacob Benjamin, Victoria Phillips, Christopher Williams, David Sauceda, James Lowery, Hal Evans, Charles Byrd, Vanessa Wilson, Daniel Cohen, Mayra Mendez, and Meliza Moran (collectively, "Plaintiffs"), will, and hereby do, move the Court under Federal Rule of Civil Procedure 23 for an order: (a) finding that the proposed settlement ("Settlement") is fair, reasonable, and adequate, and granting final approval of the Settlement; (b) finding that the form and substance of the class notice, as well as the proposed methods of disseminating notice to the Settlement Class, constitutes reasonable and the best practicable notice; (c) certifying the Settlement Class for settlement purposes; and (d) directing that judgment be entered dismissing with prejudice all individual and class claims asserted in the litigation.

This Motion is supported by the following Memorandum of Points and Authorities; the Joint Declaration of Gary M. Klinger and James J. Pizzirusso; the Declaration of Cameron R. Azari; the [Proposed] Final Approval Order; the pleadings and records on file in this action; and such other matters and argument as the Court may consider at the hearing of this Motion.

Dated: May 28, 2025

Respectfully submitted,

*/s/ James J. Pizzirusso*
James J. Pizzirusso
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
T: 202.540.7200
E: jpizzirusso@hausfeld.com

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: 866.252.0878
E: gklinger@milberg.com

*Class Counsel for Plaintiffs*

James J. Pizzirusso
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
T: 202.540.7200
E: jpizzirusso@hausfeld.com

Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, IL 60606
T: 866.252.0878
E: gklinger@milberg.com

*Class Counsel for Plaintiffs*

## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF CALIFORNIA (OAKLAND)

| | |
|---|---|
| *IN RE: POSTMEDS, INC. DATA BREACH LITIGATION* | Case No. 4:23-cv-05710-HSG |
| | Hon. Haywood S. Gilliam, Jr. |
| This Documents Relates To:<br>*All Actions* | **MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION FOR FINAL APPROVAL OF PROPOSED CLASS ACTION SETTLEMENT** |

# TABLE OF CONTENTS

TABLE OF CONTENTS .................................................................................................................. v

TABLE OF AUTHORITIES .......................................................................................................... vi

I.     INTRODUCTION ................................................................................................................ 1

II.    BACKGROUND .................................................................................................................. 3

   A.   The Data Breach ............................................................................................................ 3

   B.   Procedural History ......................................................................................................... 3

   C.   Discovery ....................................................................................................................... 4

   D.   Settlement Negotiations ................................................................................................ 4

III.   Settlement Terms and Benefits .......................................................................................... 5

   A.   Proposed Settlement Class ............................................................................................ 6

   B.   Settlement Benefits ....................................................................................................... 6

   C.   Injunctive Relief ............................................................................................................ 7

IV.    NOTICE TO THE CLASS ................................................................................................... 7

   A.   The Court-Approved Notice Plan Was Effective .......................................................... 7

   B.   The Settlement Class is Overwhelmingly in Favor of Settlement Approval .................... 8

   C.   The Costs of Notice and Claims Administration ........................................................... 9

V.     FINAL APPROVAL IS APPROPRIATE ............................................................................ 9

   A.   Legal Standards ............................................................................................................ 10

   B.   The Settlement is Fair, Adequate and Reasonable ....................................................... 11

      i.    The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely
            Duration of Future Litigation, Including the Risk of Decertification ........................... 11

      ii.   The Amount Offered in Settlement ......................................................................... 12

      iii.  The Extent of Discovery Completed and the Stage of the Proceedings ...................... 14

      iv.   The Experience and Views of Counsel .................................................................... 15

      v.    The Requested Award of Attorneys' Fees and Expense Reimbursement Are
            Reasonable ......................................................................................................... 16

      vi.   The Settlement Agreement was the Result of Arm's-Length Negotiations ................. 17

VI.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE ....................... 17

CONCLUSION .............................................................................................................................. 17

# TABLE OF AUTHORITIES

***Cases***                                                                                      ***Page(s)***

*In re Anthem, Inc. Data Breach Litig.*,
   327 F.R.D. 299 (N.D. Cal. 2018)..................................................................9, 15

*In re Anthem, Inc. Data Breach Litig.*,
   No. 5:15-MD-02617-LHK (N.D. Cal.) ......................................................13

*Campbell v. Facebook Inc.*,
   2017 WL 3581179 (N.D. Cal. Aug. 18, 2017), *aff'd*, 951 F.3d 1106 (9th Cir.
   2020) ......................................................................................................13

*Carter v. Vivendi Ticketing US LLC*,
   2023 WL 8153712 (C.D. Cal. Oct. 30, 2023)..................................................9

*Cervantez v. Celestica Corp.*,
   2010 WL 2712267 (C.D. Cal. July 6, 2010).............................................14, 15

*Churchill Vill., L.L.C. v. GE*,
   361 F.3d 566 (9th Cir. 2004) ......................................................................10

*Corona v. Sony Pictures Entmt., Inc.*,
   No. 2:14-cv-9600 (C.D. Cal.) ......................................................................9

*Diaz v. Google LLC*,
   No. 5:21-cv-03080, (N.D. Cal. Aug. 4, 2022) ............................................13

*In re Google LLC St. View Elec. Commc'ns Litig.*,
   2020 WL 1288377 (N.D. Cal. Mar. 18, 2020)..............................................13

*In re Google Plus Profile Litig.*,
   2021 WL 242887 (N.D. Cal. Jan. 25, 2021) ..............................................13

*Grant v. Capital Mgmt. Servs., L.P.*,
   2014 WL 888665 (S.D. Cal. Mar. 5, 2014) ............................................11, 12

*Hart v. Colvin*,
   2016 WL 6611002 (N.D. Cal. Nov. 9, 2016) ..............................................10

*In re Home Depot, Inc. Customer Data Sec. Breach Litig.*,
   No. 1:14-md-02583-TWT (N.D. Ga. 2016)..................................................13

*In re Hyundai and Kia Fuel Economy Litig.*,
   926 F.3d 539 (9th Cir. 2019) ......................................................................10

*In re LinkedIn User Priv. Litig.*,
   309 F.R.D. 573 (N.D. Cal. 2015) ...................................................................13

*Linney v. Cellular Alaska P'ship*,
   1997 WL 450064 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir.
   1998) ..............................................................................................................11

*McDonald, et al. v. Kiloo A/S, et al.*,
   No. 3:17-cv-04344-JD (N.D. Cal. Apr. 12, 2021) ......................................13

*Mullane v. Cent. Hanover Bank & Tr. Co.*,
   339 U.S. 306 (1950) .......................................................................................8

*Officers for Justice v. Civil Serv. Comm'n*,
   688 F.2d 615 (9th Cir. 1982) ..................................................................10, 11

*In re Online DVD-Rental Antitrust Litig.*,
   779 F.3d 934 (9th Cir. 2015) ........................................................................10

*Perkins v. LinkedIn Corp.*,
   2016 WL 613255 (N.D. Cal. Feb. 16, 2016) ...............................................13

*Riker v. Gibbons*,
   2010 WL 4366012 (D. Nev. Oct. 28, 2010) ...........................................15, 16

*Schneider v. Chipotle Mexican Grill, Inc.*,
   336 F.R.D. 588 (N.D. Cal. 2020) ...................................................................9

*Shames v. Hertz Corp.*,
   2012 WL 5392159 (S.D. Cal. Nov. 5, 2012) ...............................................17

*Staton v. Boeing Co.*,
   327 F.3d 938 (9th Cir. 2003) ........................................................................10

*In re Tableware Antitrust Litig.*,
   484 F. Supp. 2d 1078 (N.D. Cal. 2007) .......................................................14

*In re Target Corp. Customer Data Sec. Breach Litig.*,
   No. 0:14-md-02522-PAM (D. Minn. 2015).................................................14

*Van Bronkhorst v. Safeco Corp.*,
   529 F.2d 943 (9th Cir. 1976) ........................................................................10

*In re: Vizio, Inc., Consumer Privacy Litig.*,
   No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017).............................13

*In re Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*,
   2016 WL 6248426 (N.D. Cal. Oct. 25, 2016)..............................................12

**Statutes**

California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* .............................................4

California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ...............................3

Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2,
    *et seq.* .........................................................................................................................4

Medical Information Act, Cal. Civ. Code § 56, *et seq.*....................................................3

**Other Authorities**

Cal. Const. Art. 1, § 1 .........................................................................................................4

Fed. R. Civ. P. 23 ...........................................................................2, 7, 8, 9, 10, 11, 12, 14, 16

Fed. R. Civ. P. 26 (f)...........................................................................................................4

### I.    INTRODUCTION

After almost a year and a half of litigation between the Parties and following a full day mediation with experienced mediator, Jill R. Sperber of Judicate West, and months of settlement negotiations, the Parties present the Court with a Final Settlement Agreement and Release (the "Settlement Agreement"), annexed hereto as **Exhibit 1**, which resolves Plaintiffs' claims against Defendant PostMeds, Inc. d/b/a TruePill ("Defendant" or "PostMeds") in the above-captioned litigation.[1] The Settlement Agreement was only reached after the Parties thoroughly researched the relevant issues in this case, exchanged substantial informal discovery, briefed and discussed the legal and factual issues, and presented arguments multiple times to the mediator. Although much of this case was litigated beyond the view of the Court, this case was hard-fought between the Parties and the Settlement is the result of arm's-length negotiations.

The Settlement provides an excellent result for the Class in the form of: (1) a non-reversionary cash fund of $7,500,000.00 (the "Settlement Fund"),[2] which will be primarily used to make direct cash payments to Settlement Class Members; and (2) significant and meaningful injunctive relief. All Settlement Class Members who submit valid Claim Forms for compensation for out-of-pocket losses incurred as a result of the Data Breach may receive compensation of up to $4,000.00. **Exhibit 1**, § IV, ¶ 58(i). In addition, whether or not Class Members make a claim for documented out-of-pocket losses, all Settlement Class Members who submit a valid Claim Form are eligible to receive a *pro rata* cash payment that will be evenly distributed from the net remaining amount of the Settlement Fund. *Id.* ¶ 58(ii). Finally, instead of receiving a cash payment, Settlement Class Members who submit a valid Claim Form are eligible for one year of data protection and monitoring services from Privacy Shield. *Id.* ¶ 58(iii). The Settlement structure is particularly favorable here because the Settlement Agreement allows Class Members who submit

---

[1] PostMeds does not oppose the relief sought by this Motion for Final Approval and agrees that the Court should grant final approval of the Settlement Agreement. By not opposing this relief, PostMeds does not concede the factual basis for any claim and denies liability.

[2] Unless otherwise defined, all capitalized terms herein have the same meanings as those defined in Section II of the Settlement Agreement and Release. *See* **Exhibit 1**, § 2, ¶¶ 9-52.

1   a valid Claim Form to receive the additional *pro rata* cash payment without requiring Class

2   Members to identify or prove any specific harm, lost time, or out-of-pocket losses incurred as a

3   result of the Data Breach. The injunctive relief provided by the Settlement is also highly beneficial

4   to the Settlement Class because it requires PostMeds to implement and maintain substantial and

5   meaningful data security enhancements to help protect Settlement Class Members from any future

6   data breach at PostMeds.

7          The Settlement Agreement involves a multi-faceted Notice Plan, which was specifically

8   designed to provide Class Members a user-friendly Claims process, which has been, and is being,

9   implemented by the Settlement Administrator. This Court-approved Notice Plan provided for

10  notice by mail and email, in addition to the creation of a Settlement Website. As of May 28, 2025,

11  the Settlement Administrator has notified 98.9% of the Settlement Class, via 1,957,538 notices

12  sent to Class Members' last known email and mailing addresses. *See* Declaration of Cameron R.

13  Azari, Esq. ("Azari Decl."), ¶¶ 7, 18, annexed hereto as **Exhibit 2**.

14         The objection and opt-out deadline to the Settlement Agreement was April 12, 2025. Given

15  that there have only been 36 unique requests for exclusions and **no objections** submitted as of May

16  28, 2025, it is evident that Class Members have been overwhelmingly positive with respect to the

17  terms of the Settlement Agreement and supportive of final approval. *Id.* ¶ 22. By submitting Claim

18  Forms, over 49,000 Class Members have already affirmatively voted "yes" to this Settlement

19  Agreement. *Id.* ¶ 24.

20         On November 26, 2024, this Court entered an Order conditionally certifying a Settlement

21  Class, granting Preliminary Approval of the Class Action Settlement, appointing Class

22  Representatives and Counsel, approving Class Notice, and scheduling a Final Approval Hearing.

23  *See* ECF No. 105 ("Preliminary Approval Order").

24         In view of the valuable benefits discussed herein and conveyed to members of the

25  Settlement Class, and the significant risks faced through continued litigation, the Settlement

26  Agreement is "fair, reasonable, and adequate," and merits final approval.  Fed. R. Civ. P. 23(e)(2).

27

28

## II.    BACKGROUND

### A.  The Data Breach

On or about August 31, 2023, PostMeds, an online pharmacy company that fulfills mail-order prescriptions,[3] "discovered that a bad actor gained access to a subset of files used for pharmacy and fulfillment services."[4] Following an investigation, PostMeds concluded that "the bad actor accessed the files between August 30, 2023 and September 1, 2023."[5] The Private Information belonging to Plaintiffs and Class Members, current and former PostMeds customers, compromised and exposed in the Data Breach included, without limitation: patient names, contact information, demographic information, dates of birth, Social Security numbers, diagnosis information, treatment information, prescription information, medical record numbers, provider names, dates of service, and health insurance information, which PostMeds collected and maintained. PostMeds subsequently confirmed that approximately 2,004,848 individuals were impacted by the Data Breach. *See* Joint Declaration of Gary M. Klinger and James J. Pizzirusso ("Joint Decl."), annexed hereto as **Exhibit 3**, ¶¶ 5-7.

### B.  Procedural History

On November 6, 2023, certain Plaintiffs commenced the above-captioned class action against PostMeds in this Court for claims arising from the Data Breach. ECF No. 1. Subsequently, related complaints were filed, and, on December 5, 2023, the Court entered an order consolidating the related actions. *See* ECF Nos. 12-13. On April 3, 2024, Plaintiffs filed the operative Consolidated Class Action Complaint (ECF No. 82) (the "Complaint"), which alleges the following causes of action: negligence; breach of implied contract; unjust enrichment/quasi contract; invasion of privacy – intrusion upon seclusion; violations of the California Unfair Competition Law, Cal. Bus. & Prof. Code § 17200, *et seq.* ("UCL"); violations of the California

---

[3] *Your digital pharmacy partner*, POSTMEDS, https://www.truepill.com/ (last accessed May 25, 2025).

[4] *Notice of a Data Security Incident*, POSTMEDS, https://www.documentcloud.org/documents/24171378-postmedstruepill-data-breach-notice/ (last accessed May 25, 2025).

[5] *Id.*

Confidentiality of Medical Information Act, Cal. Civ. Code § 56, *et seq.* ("CMIA"); violations of the California Customer Records Act, Cal. Civ. Code §§ 1798.80, *et seq.* ("CRA"); invasion of privacy – Cal. Const. Art. 1, § 1; and violations of the Illinois Consumer Fraud and Deceptive Business Practices Act, 815 ILCS 505/2, *et seq.* ("ICFA").

The Parties conducted meaningful discovery and engaged in extensive, arm's-length settlement negotiations, including a full-day mediation session with Mediator Jill. R. Sperber of Judicate West. *See* Joint Decl. ¶¶ 13, 16. Plaintiffs also continued to investigate this action by vetting additional plaintiffs, and the Parties continued to pursue this action by conducting a Rule 26(f) conference, drafting and filing case management statements, developing and filing the Complaint, and researching and briefing the legal issues in this case. On June 25, 2024, the Parties reached an agreement on the Settlement and promptly notified the Court. ECF No. 91.

### C. Discovery

The Parties engaged in months of extensive informal discovery. *See* Joint Decl. ¶¶ 12-13. Plaintiffs received and reviewed documents and other information related to the Data Breach and Defendant's investigation thereof. *Id.* Based on analysis of this information, Plaintiffs were able to gain an in-depth understanding of the Data Breach and the strength of Plaintiffs' claims and engage in meaningful settlement discussions. *Id.* ¶ 14.

### D. Settlement Negotiations

Plaintiffs served their first confidential settlement demand on PostMeds on April 29, 2024. *Id.* at ¶ 15.

The Parties prepared and exchanged comprehensive mediation briefs in advance of mediation. *Id.* Thus, before any settlement terms were negotiated, Plaintiffs had a thorough understanding of the composition of the Settlement Class, the nature of PostMeds' anticipated defenses on the merits, the likely nature of arguments that would be advanced at class certification, summary judgment, and trial, and the complex technical issues surrounding the claims and defenses in this matter. *Id.* ¶ 14.

On May 3, 2024, the Parties met with mediator Jill R. Sperber for a full day of mediation. *Id.* ¶ 16. The mediation began with both Parties submitting position papers to the mediator, then the Parties discussed face-to-face the issues in this case. *Id.* ¶ 17. The Parties discussed factual and liability issues, the state of the law, potential damages, and Plaintiffs' ability to certify the Class. *Id.* Class Counsel spent many hours with Ms. Sperber, informing her of the strengths of Plaintiffs' and Class Members' claims and educating her on the relevant case law. *Id.* The Parties argued complex areas of fact and law with each other and with the mediator. *Id.* Ultimately, although significant progress was made, the day did not result in a settlement as both Parties zealously advocated for their respective clients. *Id.* ¶¶ 18-19.

Although the mediation session did not result in a resolution of the case, the Parties continued to negotiate for four months. *Id.* The mediator challenged the Parties to support their positions, and the Parties provided additional information to Ms. Sperber, including case law and comparable resolutions in support of their respective positions. *Id.* ¶ 19. Based on the discussions during the mediation, Class Counsel spent months conducting research on disputed issues and provided Ms. Sperber with memorandums concerning Plaintiffs' damages, the legal implications of Plaintiffs' claims, and Defendant's duties and liabilities under relevant law. *Id.*

After receiving additional information from the Parties and extensive follow-up discussions with the Parties, Ms. Sperber provided a mediator's proposal, and the Parties, ultimately, reached a resolution with Ms. Sperber's continued guidance. *Id.* On June 17, 2024, after weeks of additional negotiations, the Settlement Agreement was finalized and executed. *See* ECF Nos. 91, 97.

## III.    Settlement Terms and Benefits

The Settlement Agreement provides significant and valuable benefits to the Settlement Class. First, all Settlement Class Members who submit valid Claim Forms are eligible to receive a documented loss cash payment and/or their choice of: (A) a *pro rata* cash payment from the $7,500,000.00 non-reversionary Settlement Fund; or (B) valuable credit and medical identity monitoring. Second, the Settlement Agreement provides significant remedial measures that

PostMeds has and will enact because of this litigation that will benefit all Settlement Class Members, regardless of whether they submit a Claim Form. These benefits would not have been obtained without this litigation.

### A.  Proposed Settlement Class

The Court preliminarily certified a Settlement Class, which consisted of the approximately two million residents of the United States who were sent notice that their Private Information was potentially compromised in the Data Breach. *See* ECF No. 97, at p. 3. The Settlement Class specifically excludes: (i) any judge, justice, or judicial officer presiding over the Action and the members of their immediate families; (ii) PostMeds, any Entity in which PostMeds has a controlling interest, and PostMeds' officers, directors, successors, subsidiaries, and parent companies; and (iii) any individual who timely and validly opts out of the Settlement Agreement. *See id.* at p. 4. Consistent with their notice requirements under law, PostMeds confirmed to Plaintiffs and Class Counsel that they have already notified individuals whose Private Information was impacted by the Data Breach. Joint Decl. ¶¶ 7, 13 n.6. Thus, the Settlement Class, as defined above, accurately identifies members of the Settlement Class.

### B.  Settlement Benefits

Per the terms of the Settlement Agreement, PostMeds (or its insurance carrier) will pay $7,500,000.00 into a non-reversionary Settlement Fund. Claims administration costs, any attorneys' fees and expenses award, and any Service Awards to Settlement Class Representatives (not to exceed $1500.00) will be paid from the Settlement Fund. The remaining amount, the Net Settlement Fund, will be distributed to Settlement Class Members who submit a valid Claim Form as direct cash payments.

The Settlement Agreement provides Settlement Class Members with two mechanisms to receive compensation from the Settlement Fund. First, Settlement Class Members can submit documented claims up to $4,000.00 for out-of-pocket expenses incurred as a result of the Data Breach. Second, in addition to these documented out-of-pocket loss expenses, Settlement Class Members are also eligible to submit claims for *pro rata* cash payments. Settlement Class Members

are not required to present any type of documentation to receive this alternative cash payment. Rather, Settlement Class Members need only provide basic contact information, select their preferred form of payment, and submit their signed Claim Form to receive a *pro rata* cash payment. Finally, the Settlement Agreement provides that, rather than receiving a cash payment, Settlement Class Members who submit a valid Claim Form are eligible for one year of data protection and monitoring services from Privacy Shield.

The monetary components of the Settlement Agreement provide significant cash benefits to Settlement Class Members, and the state-of-the-art monitoring products offered (including both traditional credit monitoring and medical identity theft monitoring) are equally if not more valuable.

### C. Injunctive Relief

The Settlement Agreement also provides all Settlement Class Members with significant injunctive relief, designed to improve PostMeds' data security practices moving forward and prevent a similar data breach in the future.

Specifically, as a result of the Action, PostMeds provided Class Counsel assurances that it would enhance its data security infrastructure to better protect consumers' Private Information. These remedial measures benefit every Settlement Class Member, regardless of whether they submit a Claim Form under the Settlement Agreement.

## IV.    NOTICE TO THE CLASS

### A. The Court-Approved Notice Plan Was Effective

The Notice Plan preliminarily approved by the Court was extraordinarily effective and constituted the best notice practicable under the circumstances. Fed. R. Civ. P. 23(c)(2).

The Notice Plan here consisted of notice by email and mail, as well as notice posted on the Settlement Website. *See* Azari Decl. ¶¶ 7, 12, 14, 19. On December 19, 2024—after the Court ordered issuance of Notice to Class Members consistent with preliminary approval of the Settlement Agreement—the Settlement Administrator received two data files containing 1,999,517 records for identified Settlement Class Members. *Id.* ¶ 11. These files included

1  Settlement Class Members' full names, current or last-known contact information, and email

2  addresses where available. *Id.* Following receipt of these files, the Settlement Administrator

3  notified 98.9% of Class Members, including via 1,857,598 emailed notices and 105,651 mailed

4  notices to Class Members' last known mailing and email addresses. *Id.* ¶¶ 7, 12, 14. In addition,

5  the Settlement Administrator posted notice of the Settlement on the Settlement Website. *Id.* ¶ 19.

6          The Notices provided to the Settlement Class were clear and straightforward and were

7  consistent with the guidance for class notice set forth by the Federal Judicial Center. *See* Federal

8  Judicial  Center,  Illustrative  Forms  of  Class  Action  Notices:  Overview,

9  https://www.fjc.gov/content/301253/illustrative-forms-class-action-notices-introduction  (last

10  visited May 25, 2025). The Notices provided accurate information in plain language about the

11  nature of the Action and the Settlement Agreement, including the applicable deadlines to opt-out

12  and object, instructions for submitting a Claim Form, and information about how to appear at the

13  Fairness Hearing personally or through counsel. *See* Azari Decl. ¶¶ 26, 27. The Settlement

14  Administrator also created and maintained the Settlement Website, where Settlement Class

15  Members could submit claims and view important documents. *Id.* ¶ 19. Settlement Class Members

16  were also afforded the opportunity to call a toll-free number with questions concerning the

17  Settlement Agreement. *Id.* ¶ 20.

18          As a result, Settlement Class Members received the "best notice that is practicable under

19  the circumstances," Fed. R. Civ. P. 23(c)(2), because they received notice that was "reasonably

20  calculated, under all the circumstances, to apprise interested parties of the pendency of the action

21  and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr.*

22  *Co.*, 339 U.S. 306, 314 (1950).

23      **B.  The Settlement Class is Overwhelmingly in Favor of Settlement Approval**

24          Settlement Class Members have had an overwhelmingly positive response to the

25  Settlement Agreement. The claims deadline was May 12, 2025, and, as of May 28, 2025, a total

26  of 49,138 Claim Forms have been received. *See* Azari Decl. ¶ 24. This amounts to a response rate

27  of approximately 2.5% of the approximately two million Class Members. This response rate

28

compares favorably to the claims rates in other data breach class action settlements. *See e.g.*, *Carter v. Vivendi Ticketing US LLC*, 2023 WL 8153712, at *9 (C.D. Cal. Oct. 30, 2023) (approving settlement agreement with claims rate of 1.6%); *Schneider v. Chipotle Mexican Grill, Inc.*, 336 F.R.D. 588, 599 (N.D. Cal. 2020) ("Here, the 0.83% claims rate (which represents the estimated size of the targeted population of potential class members compared to the actual claim submissions) is on par with other consumer cases, and does not otherwise weigh against approval."); *Corona v. Sony Pictures Entmt., Inc.*, No. 2:14-cv-9600 (C.D. Cal.), ECF Nos. 145-1 at 11 n.8 & 164 at 2 (approving settlement agreement with claims rate of 0.7%); *In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. 299, 329 (N.D. Cal. 2018) (approving settlement agreement with claims rate of 1.8%). Moreover, the deadline for Settlement Class Members to object to any aspect of the Settlement was April 12, 2025, and, as of May 28, 2025, *no Class Members have objected to the Settlement Agreement* and only 36 Class Members opted out of the Settlement. *See* Azari Decl. ¶ 22.

### C. The Costs of Notice and Claims Administration

Consistent with the terms of the Settlement Agreement, the costs for Notice and administration of the Settlement Agreement will be paid by PostMeds via an allocation from the Settlement Fund. Class Counsel solicited bids from three different settlement administrators, negotiated pricing with the prospective settlement administrators, and determined Epiq was the most favorable settlement administrator for Class Members. *See* Joint Decl. ¶¶ 21-22. The Notice Plan estimated that Notice and Administrative Expenses would total approximately $498,547.00, which is a reasonable and fair cost given the size of the Settlement Class and claims in this case. *Id.* ¶ 24.

### V.    FINAL APPROVAL IS APPROPRIATE

On November 26, 2024, the Court completed the initial step in the settlement approval process by issuing the Preliminary Approval Order. ECF No. 105. As set forth above, the Parties and Settlement Administrator completed the second step by executing the Notice Plan to Class Members. Plaintiffs now respectfully request that the Court take the third and final step in the

1    process by granting final approval of the Settlement Agreement because it is fair, reasonable, and

2    adequate.

3       **A.  Legal Standards**

4       The Ninth Circuit has a "strong judicial policy that favors settlements, particularly where

5    complex class action litigation is concerned." *In re Hyundai and Kia Fuel Economy Litig.*, 926

6    F.3d 539, 556 (9th Cir. 2019); *see also Officers for Justice v. Civil Serv. Comm'n*, 688 F.2d 615,

7    625 (9th Cir. 1982); *Van Bronkhorst v. Safeco Corp.*, 529 F.2d 943, 950 (9th Cir. 1976) ("[T]here

8    is an overriding public interest in settling and quieting litigation," and this is "particularly true in

9    class action suits[.]"). "'The initial decision to approve or reject a settlement proposal is committed

10   to the sound discretion of the trial judge.'" *Hart v. Colvin*, 2016 WL 6611002, at *4 (N.D. Cal.

11   Nov. 9, 2016) (quoting *Class Plaintiffs v. City of Seattle*, 955 F.2d 1268, 1276 (9th Cir. 1992)). In

12   the context of a class settlement, the Court must determine whether the settlement is

13   "fundamentally fair, adequate and reasonable" under Rule 23(e). *Staton v. Boeing Co.*, 327 F.3d

14   938, 959 (9th Cir. 2003) (citation omitted).

15      In evaluating whether to grant final approval of the Settlement, the Ninth Circuit has

16   advised that the task before the Court is to consider: (1) the strength of the plaintiffs' case; (2) the

17   risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class

18   action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery

19   completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the

20   presence of a governmental participant; and (8) the reaction of the class members to the proposed

21   settlement. *Churchill Vill., L.L.C. v. GE*, 361 F.3d 566, 575-76 (9th Cir. 2004); *see also In re*

22   *Online DVD-Rental Antitrust Litig.*, 779 F.3d 934, 944 (9th Cir. 2015). In December 2018, the

23   Supreme Court approved amendments to Rule 23(e), which are substantially incorporated within

24   the Ninth Circuit's factors set forth above.[6]

25

26   _____

27   [6] Amended Rule 23(e)(2) provides that, in order for the Court to conclude that it will likely find
     that the settlement is fair, reasonable and adequate, it must consider the following factors:

28

### B.  The Settlement is Fair, Adequate, and Reasonable

In evaluating the Settlement Agreement, the Court must consider the Settlement Agreement as a whole for overall fairness and not in individual component parts. *Officers for Justice*, 688 F.2d at 625. Accordingly, the Fairness Hearing is "not to be turned into a trial or rehearsal for trial on the merits," nor should the Settlement Agreement "be judged against a hypothetical or speculative measure of what might have been achieved by the negotiators." *Id.* Rather, "[t]he involvement of experienced class action counsel and the fact that the settlement agreement was reached in arm's length negotiations, after relevant discovery had taken place create a presumption that the agreement is fair." *Linney v. Cellular Alaska P'ship*, 1997 WL 450064, at *5 (N.D. Cal. July 18, 1997), *aff'd*, 151 F.3d 1234 (9th Cir. 1998).

### i. The Strength of Plaintiffs' Case and the Risk, Expense, Complexity, and Likely Duration of Future Litigation, Including the Risk of Decertification[7]

Class Counsel weighed the risks of continued litigation of this Action against the immediacy and certainty of the significant recovery provided to Class Members in the Settlement Agreement. In recognition of this balance, the Court should approve the Settlement Agreement. *See, e.g.*, *Grant v. Capital Mgmt. Servs., L.P.*, 2014 WL 888665, at *3 (S.D. Cal. Mar. 5, 2014)

---

(A) the class representatives and class counsel have adequately represented the class;

(B) the proposal was negotiated at arm's length;

(C) the relief provided for the class is adequate, taking into account:

    (i)    the cost, risks and delay of trial and appeal;

    (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;

    (iii)    the terms of any proposed award of attorney's fees including timing of payment; and

    (iv)    any agreement required to be identified under Rule 23(e)(3); and

(D) the proposal treats class members equitably relative to each other.

[7] This factor overlaps with amended Rule 23(e)(2)(C)(i) (the costs, risks, and delay of trial and appeal).

1    (discussing the advantage of taking "a bird in hand" as the court "compare[s] the significance of

2    immediate recovery by way of the compromise to the mere possibility of relief in the future, after

3    protracted and expensive litigation") (quoting *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*,

4    221 F.R.D. 523, 526 (C.D. Cal. 2004)).

5         Plaintiffs are confident in the strength of their claims, that the Court would certify a Class,

6    and that the likelihood of success at trial is substantial. PostMeds is also confident, however, in its

7    defenses and arguments opposing class certification and at trial. Both Parties understand and

8    acknowledge the risks associated with their respective positions at class certification, summary

9    judgment and at trial. Prosecuting this Action through a potential trial and appeal would be lengthy,

10    complex, and impose significant costs on both Parties and the Court. Through continued litigation

11    of this Action, Settlement Class Members face increased risk, expense, and delay, holding up any

12    potential recovery for Settlement Class Members for several more years.

13         In contrast, the Settlement Agreement provides Settlement Class Members with tangible,

14    substantial, bird in hand relief that fairly, reasonably, and adequately addresses the harms caused

15    by the Data Breach, without the risk and delay inherent in litigating this Action through trial and

16    appeal. Thus, this factor weighs in favor of final approval of the Settlement Agreement. *See In re*

17    *Volkswagen "Clean Diesel" Mktg., Sales Practices, & Prods. Liab. Litig.*, 2016 WL 6248426, at

18    *11 (N.D. Cal. Oct. 25, 2016) ("Settlement is favored in cases [such as this one] that are complex,

19    expensive, and lengthy to try.") (citing *Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir.

20    2009)); *Grant*, 2014 WL 888665, at *3.

21         ii.    **The Amount Offered in Settlement**[8]

22         The Settlement Agreement establishes a $7,500,000.00 non-reversionary Settlement Fund,

23    which represents a fair, adequate, and reasonable result for Settlement Class Members. The

24    Settlement also secures substantial injunctive relief in the form of remedial measures implemented

25    by PostMeds as a result of this Action, the consideration of which increases the total value of the

26

27    _____

28    [8] This factor overlaps with amended Rule 23(e)(2)(C) (adequacy of relief provided to the class).

Settlement beyond $7,500,000.00.

The relief provided by the Settlement here is significant, given that damages in privacy actions are often uncertain, and numerous privacy class actions have settled for non-monetary relief. *See, e.g.*, *Campbell v. Facebook Inc.*, 2017 WL 3581179, at *8 (N.D. Cal. Aug. 18, 2017) (granting final approval of declaratory and injunctive relief settlement in litigation alleging Facebook engaged in user privacy violations), *aff'd*, 951 F.3d 1106 (9th Cir. 2020); *In re Google LLC St. View Elec. Commc'ns Litig.*, 2020 WL 1288377, at *16 (N.D. Cal. Mar. 18, 2020) (granting final approval of settlement providing class with injunctive relief and creating a non-distributable *cy pres* settlement fund in litigation alleging Google violated privacy by illegally gathering Wi-Fi network data); *Diaz v. Google LLC*, No. 5:21-cv-03080, Dkt. 74 (N.D. Cal. Aug. 4, 2022) (seeking final approval of non-monetary settlement of claims that Google exposed PHI and PII through contact tracing system); *McDonald, et al. v. Kiloo A/S, et al.*, No. 3:17-cv-04344-JD, Dkt. 406 (N.D. Cal. Apr. 12, 2021) (granting final approval of 16 injunctive relief-only settlements in related privacy class actions accusing defendants of violating child privacy protection laws).

The Settlement Agreement (providing a $7.5 million Settlement Fund for approximately two million Settlement Class Members – $3.75 per Class Member) compares favorably to other data breach settlements. *See, e.g.*, *In re Google Plus Profile Litig.*, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (settlement fund of $7.5 million for 161 million Google+ users whose personal information was exposed); *In re: Vizio, Inc., Consumer Privacy Litig.*, No. 8:16-ml-02693-JLS-KES (C.D. Cal. July 31, 2017) (settlement fund of $17 million for 16 million potential claimants for unauthorized collection and disclosure of information from customers' smart TVs); *Perkins v. LinkedIn Corp.*, 2016 WL 613255, at *2, 9 (N.D. Cal. Feb. 16, 2016) (granting final approval of $13 million settlement for class of approximately 20.8 million); *In re Anthem, Inc. Data Breach Litig.*, No. 5:15-MD-02617-LHK (N.D. Cal.) (securing $1.39 per class member); *In re LinkedIn User Priv. Litig.*, 309 F.R.D. 573, 582 (N.D. Cal. 2015) (settlement fund of $1.25 million for approximately 6.4 million LinkedIn users); *In re Home Depot, Inc. Customer Data Sec. Breach*

*Litig.*, No. 1:14-md-02583-TWT (N.D. Ga. 2016) (securing $0.51 to $0.68 per class member); *In re Target Corp. Customer Data Sec. Breach Litig.*, No. 0:14-md-02522-PAM (D. Minn. 2015) (securing $0.15 per class member).

When assessing the adequacy of a proposed class settlement, "courts primarily consider plaintiffs' expected recovery balanced against the value of the settlement offer." *In re Tableware Antitrust Litig.*, 484 F. Supp. 2d 1078, 1080 (N.D. Cal. 2007). Here, Plaintiffs assert both statutory and common law claims. Should this Action proceed to jury verdict, there is a wide and uncertain range of potential damages recoveries for Plaintiffs' statutory claims ranging from $315,000 to $315 million dollars. *See* ECF No. 97-2 (Joint Decl. in Support of Unopposed Motion for Preliminary Approval), ¶ 13 n.6. Plaintiffs' common law claims provide an additional but uncertain damages recovery range between $4 million dollars and $50 million dollars.

Given the significant uncertainty that plagues the potential damages recovery models, and the general risk and expense associated with protracted litigation, the $7,500,000.00 Settlement Fund agreed to by the Parties here is well within the range of possible recoveries. Thus, by any metric, the Settlement Agreement is fair, reasonable, and adequate.

### iii.     The Extent of Discovery Completed and the Stage of the Proceedings[9]

The fact that the Parties have engaged in meaningful informal discovery and thoroughly briefed and discussed various issues prior to and during mediation "weighs in favor of the proposed settlement." *Cervantez v. Celestica Corp.*, 2010 WL 2712267, at *3 (C.D. Cal. July 6, 2010).

This Action has been pending for approximately 1.5 years. During that time, the Parties engaged in significant and lengthy discussions surrounding the facts and legal issues in this case, including with a neutral mediator. During this time, Plaintiffs also submitted informal discovery requests, received and reviewed hundreds of pages of informal discovery, and spent hours researching the relevant claims and defenses. The Parties briefed disputed issues in this case in their statements and memorandums to the mediator. This work, combined with Class Counsel's

---

[9] This factor overlaps with amended Rule 23(e)(2)(A) (whether "the class representatives and class counsel have adequately represented the class").

1    pre-suit investigation, provided Class Counsel with knowledge sufficient to understand the

2    strengths and weaknesses of Plaintiffs' claims and to fully evaluate the risks and uncertainties of

3    continued litigation. *See In re Anthem, Inc. Data Breach Litig.*, 327 F.R.D. at 320 ("This exchange

4    of information and progress in the litigation confirm that the parties have a good sense of the

5    strength and weaknesses of their respective cases in order to 'make an informed decision about

6    settlement.'") (quoting *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000)).

7    　　　Thus, this factor also weighs strongly in favor of approving the Settlement. *See Cervantez*,

8    2010 WL 2712267, at *3.

9    　　　　　**iv.    The Experience and Views of Counsel**

10    　　　"The recommendation of experienced counsel in favor of settlement carries a 'great deal

11    of weight' in a court's determination of the reasonableness of a settlement." *Riker v. Gibbons*,

12    2010 WL 4366012, at *4-5 (D. Nev. Oct. 28, 2010) (quoting *In re Immune Response Sec. Litig.*,

13    497 F. Supp. 2d 1166, 1174 (S.D. Cal. 2007)). "'The weight accorded to the recommendation of

14    counsel is dependent on a variety of factors; namely, length of involvement in litigation,

15    competence, experience in the particular type of litigation, and the amount of discovery

16    completed.'" *Id.* at *4 (quoting 4 Alba Conte & Herbert B. Newberg, *Newberg on Class Actions*

17    §11:47 (4th ed. 2002)). Here, Class Counsel are highly-experienced litigators and view the

18    Settlement Agreement as an exceptional result for the Settlement Class. *See* Joint Decl. ¶¶ 29-37.

19    　　　Plaintiffs and Settlement Class Members are represented by Gary M. Klinger of Milberg

20    Coleman Bryson Phillips Grossman, PLLC ("Milberg") and James J. Pizzirusso of Hausfeld LLP

21    ("Hausfeld") (collectively, "Class Counsel"), among others. Mr. Klinger and Mr. Pizzirusso have

22    significant, longstanding and meaningful experience handling complex privacy class actions and

23    have a demonstrated and proven track record of experience, knowledge, and success in litigating

24    cases just like this one. *See, e.g.*, ECF No. 17 (Plaintiffs' Motion to Appoint Interim Class

25    Counsel); ECF 97-2 (Joint Decl. in Support of Unopposed Motion for Preliminary Approval), ¶¶

26    37-69.

27

28

Class Counsel have fully evaluated the available facts, applicable law, and comparable settlements, and have concluded that the Settlement Agreement is fair, reasonable, adequate, and provides substantial and meaningful benefits to Settlement Class Members. Weighing and considering the risks and uncertainties of continued litigation of this Action, and all the factors bearing on the merits of the Settlement Agreement, Class Counsel is satisfied that the Settlement Agreement is fair, reasonable, adequate, and in the best interests of Settlement Class Members. *See* Joint Decl. ¶¶ 29-37. Because Class Counsel are experienced attorneys in this field, their opinion that the Settlement Agreement is fair, adequate, and reasonable and in the Settlement Class Members' best interest also weighs in favor of final approval of the Settlement. *Riker*, 2010 WL 4366012, at *5.

### v. The Requested Award of Attorneys' Fees and Expense Reimbursement Are Reasonable[10]

Class Counsel previously moved for an award of $1,875,000.00 in attorneys' fees and $46,766.40 in expenses. ECF No. 109. As set forth in the fee motion, the requested award is supported by the exceptional results achieved, the risks inherent to this litigation, the quality of Plaintiffs' representation in this Action, awards in comparable cases, the contingent nature of the representation, the overwhelmingly positive response of Settlement Class Members, and the significant amount of time spent by Class Counsel litigating this Action.

Plaintiffs also move for service awards in the amount of $1,500.00 to each Settlement Class Representative ($36,000.00 in total) for their service on behalf of the Settlement Class, which included reviewing and approving pleadings and motions filed in the case, responding to discovery requests, gathering and producing documents related to their claims, and communicating with counsel throughout this litigation.

As a result, this factor is satisfied, and does not pose any barrier to granting approval of the Settlement Agreement.

---

[10] This factor overlaps with Amended Rule 23(e)(2)(3) (proposed award of attorneys' fees).

**vi.    The Settlement Agreement was the Result of Arm's-Length Negotiations**

The Parties negotiated a Settlement Agreement worth more than $7.5 million dollars for Settlement Class Members. This exceptional result was achieved only as a result of long and hard-fought arm's-length negotiations assisted by a neutral mediator, Jill R. Sperber. Indeed, the Parties were only able to reach a Settlement Agreement after a full-day mediation session and following the mediator's proposal helping to facilitate a resolution. These facts evidence the Settlement Agreement's fairness as a product of arm's-length negotiations. *See, e.g.*, *Shames v. Hertz Corp.*, 2012 WL 5392159, at *15 (S.D. Cal. Nov. 5, 2012) (granting final approval and finding lengthy settlement negotiations overseen by mediators was convincing evidence that settlement was not a result of collusion).

## VI.    CERTIFICATION OF THE SETTLEMENT CLASS IS APPROPRIATE

Under the terms of the Settlement Agreement, the Parties have agreed, for the purposes of the Settlement only, to the certification of the following Settlement Class:

> All U.S. residents who were sent notice that their Private Information was potentially compromised as a result of the Data Incident experienced by PostMeds, Inc. dba TruePill ("PostMeds" or "Defendant"), on or about October 30, 2023.

In the Court's Preliminary Approval Order, the Court preliminarily certified the above Settlement Class. *See* ECF No. 105, p. 3-7. None of the facts, law, or circumstances underpinning the Court's decision have since changed. As a result, Plaintiffs respectfully request that the Court finally certify the Settlement Class for Settlement purposes only.

## CONCLUSION

Plaintiffs respectfully request that the Court grant their Motion for Final Approval and enter an order of judgment.

Dated: May 28, 2025

Respectfully submitted,

*/s/ James J. Pizzirusso*
James J. Pizzirusso
**HAUSFELD LLP**
1200 17th Street NW, Suite 600
Washington, DC 20036
T: 202.540.7200
E: jpizzirusso@hausfeld.com

*/s/ Gary M. Klinger*
Gary M. Klinger
**MILBERG COLEMAN BRYSON
PHILLIPS GROSSMAN, PLLC**
227 W. Monroe Street, Suite 2100
Chicago, Illinois 60606
T: 866.252.0878
E: gklinger@milberg.com

*Class Counsel for Plaintiffs*

**ATTESTATION**

Pursuant to Civil Local Rule 5-1(i)(3), I, James J. Pizzirusso, hereby certify that I have obtained the concurrence in the filing of this document from all signatories listed above. I further attest that I have on file records to support this concurrence for subsequent production to the Court if so ordered or for inspection upon request.


Dated: May 28, 2025                    */s/ James J. Pizzirusso*
                                       James J. Pizzirusso

**CERTIFICATE OF SERVICE**

The undersigned hereby certifies that on May 28, 2025, the foregoing document was filed via the Court's ECF system, which will cause a true and correct copy of the same to be served electronically on all ECF-registered counsel of record.

*/s/ James J. Pizzirusso*
James J. Pizzirusso