UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| RICHARD REED, et al.,<br><br>    Plaintiffs,<br><br>v.<br><br>POSTMEDS, INC., et al.,<br><br>    Defendants. | Case No. 23-cv-05710-HSG<br><br>**ORDER GRANTING FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND AWARD OF ATTORNEYS' FEES**<br><br>Re: Dkt. Nos. 109, 112 |

Pending before the Court are Plaintiffs' unopposed motions for final approval of class action settlement and for attorneys' fees, costs, and service awards. Dkt. Nos. 112, 109. The Court held a final fairness hearing on June 12, 2025, and now GRANTS both motions.

## I. BACKGROUND

### A. Factual Allegations and Procedural Background

This is a putative class action brought on behalf of current and former customers of Defendant PostMeds, Inc. ("PostMeds"). PostMeds, a digital pharmacy that fulfills mail-order prescriptions, suffered a data breach between August 30, 2023 and September 1, 2023 that exposed its customers' personally identifiable and protected health information, including names, dates of birth, Social Security numbers, diagnosis information, treatment information, prescription information, medical record numbers, and health insurance information. Dkt. No. 112 ("Mot.") at 11. The breach affected approximately 2,004,848 individuals. *Id.* Plaintiffs assert that the data breach resulted from PostMeds' failure to implement reasonable cyber-security measures. *See* Dkt. No. 82 ("Compl.") at 3. Based on these allegations, Plaintiffs brought the above-captioned class action, asserting violations of California and Illinois consumer protection and privacy laws, as well as negligence, breach of implied contract, unjust enrichment/quasi contract, and invasion

of privacy.

Following informal discovery and with the assistance of private mediator Jill Sperber, the parties entered into a settlement agreement in June 2024. *See* Dkt. No. 112-1 ("Settlement Agreement" or "SA"). In September 2024, the parties filed their motion for preliminary approval, Dkt. No. 97, which the Court granted. *See In re PostMeds, Inc. Data Breach Litig.*, No. 23-CV-05710-HSG, 2024 WL 4894293 (N.D. Cal. Nov. 26, 2024). The parties now seek final approval of the class action settlement, Dkt. No. 112, and class counsel seeks attorneys' fees, costs, and service awards for the named Plaintiffs, Dkt. No. 109.

### B. Settlement Agreement

The key terms of the Settlement Agreement are as follows:

Class Definition: The class is defined as "[a]ll U.S. residents who were sent notice that their Private Information was potentially compromised as a result of the Data Incident experienced by PostMeds, Inc. d/b/a TruePill ('PostMeds' or 'Defendant'), on or about October 30, 2023." SA § 44. The proposed class comprises approximately two million individuals. Mot. at 11.

Settlement Benefits: PostMeds will make a $7,500,000 payment into a non-reversionary settlement fund. Mot. at 14; SA § 48. Each class member may submit claims for up to $4,000 in compensation for out-of-pocket losses resulting from the data breach. Mot. at 14; SA § 58. In addition to compensation for out-of-pocket losses, each class member may submit a claim for either (1) a pro rata cash payment from the settlement fund or (2) one year of data protection services from Privacy Shield. Mot. at 15. Cash payments from the settlement fund will be evenly distributed on a pro rata basis after all out-of-pocket loss claims, notice and administrative expenses, Privacy Shield expenses, service awards, and attorneys' fees and expense awards are paid. Mot. at 14; SA §56. The Settlement Agreement also provides for injunctive relief in the form of "business practice changes and security enhancements designed to prevent future data security incidents." SA § 66.[1]

---

[1] PostMeds provided a declaration to class counsel attesting in greater detail to these changes. To avoid enabling future cyber attacks, the parties have sensibly agreed not to disclose the specifics of

2

Release: The class will release PostMeds from "any claims . . . and issues of any kind or nature, whether known or unknown, that each Settlement Class member has, had, or may ever have, now or in the future, known or unknown, arising out of or in any way related to the Data Incident whether or not those claims, demands, rights, actions, or causes of action have been pleaded or otherwise asserted, including any and all damages, losses, or consequences thereof." SA § 80. Class members also agree to waive their rights under Section 1542 of the California Civil Code. *Id.* § 82.

Service Award: Class representatives may seek service awards up to $1,500. If approved, these awards will be paid from the settlement fund. SA § 84.

Opt-Out Procedure: Class members who do not wish to join the settlement were required to submit a written request for exclusion to the settlement administrator by the designated "Opt-Out Deadline," which was April 12, 2025. SA § 32, 69; Mot. at 10.

Attorneys' Fees and Costs: Class counsel may seek attorneys' fees, not exceed one-third of the fund's size or $2,500,000. SA § 83. In addition to attorneys' fees, counsel may seek an award for reasonable costs and expenses. Any attorneys' fees or expenses that the Court awards will be paid from the settlement fund. *Id.*

## II. FINAL SETTLEMENT APPROVAL
### A. Class Certification

Final approval of a class action settlement requires, as a threshold matter, an assessment of whether the class satisfies the requirements of Federal Rule of Civil Procedure 23(a) and (b). *Hanlon v. Chrysler Corp.*, 150 F.3d 1011, 1019–1022 (9th Cir. 1998). Because no facts that

---

these reforms in their public filings.

would affect these requirements have changed since the Court preliminarily certified the class on November 26, 2024, this order incorporates by reference the Court's prior analysis under Rules 23(a) and (b) as set forth in the order granting preliminary approval. *See In re PostMeds*, 2024 WL 4894293, at *3–5.

### B. The Settlement

"The claims, issues, or defenses of a certified class . . . may be settled . . . only with the court's approval." Fed. R. Civ. P. 23(e). The Court may finally approve a class settlement "only after a hearing and only on finding that it is fair, reasonable, and adequate." Fed. R. Civ. P. 23(e)(2). Where the parties reach a class action settlement prior to class certification, the Ninth Circuit has cautioned that such settlement agreements "must withstand an even higher level of scrutiny for evidence of collusion or other conflicts of interest than is ordinarily required under Rule 23(e) before securing the court's approval as fair." *Roes, 1–2 v. SFBSC Mgmt., LLC*, 944 F.3d 1035, 1049 (9th Cir. 2019) (quoting *In re Bluetooth Headset Prods. Liab. Litig.*, 654 F.3d 935, 946 (9th Cir. 2011)). "This more exacting review is warranted to ensure that class representatives and their counsel do not secure a disproportionate benefit at the expense of the unnamed plaintiffs who class counsel had a duty to represent." *Id.* (internal quotations marks and citations omitted).

The Ninth Circuit has identified several "subtle signs" the Court should consider in determining whether "class counsel have allowed pursuit of their own self-interests . . . to infect the negotiations." *Roes*, 944 F.3d at 1043 (citations omitted). These include: "(1) when counsel receive[s] a disproportionate distribution of the settlement; (2) when the parties negotiate a clear-sailing arrangement, under which the defendant agrees not to challenge a request for an agreed-upon attorney's fee; and (3) when the agreement contains a kicker or reverter clause that returns unawarded fees to the defendant, rather than the class." *McKinney-Drobnis v. Oreshack*, 16 F.4th 594, 607–08 (9th Cir. 2021) (citation omitted).

To assess whether a proposed settlement comports with Rule 23(e), the Court may also consider some or all of the following factors:

4

> (1) the strength of plaintiff's case; (2) the risk, expense, complexity, and likely duration of further litigation; (3) the risk of maintaining class action status throughout the trial; (4) the amount offered in settlement; (5) the extent of discovery completed and the stage of the proceedings; (6) the experience and views of counsel; (7) the presence of a governmental participant; and (8) the reaction of the class members to the proposed settlement.

*McKinney-Drobnis*, 16 F.4th at 609 (quoting *Churchill Vill., LLC v. Gen. Elec.*, 361 F.3d 566, 575 (9th Cir. 2004)) (emphasis omitted). In addition, "[a]dequate notice is critical to court approval of a class settlement under Rule 23(e)." *Hanlon*, 150 F.3d at 1025. As discussed below, the Court finds that class members received adequate notice, and that the proposed settlement is fair, adequate, and reasonable.

### i. Adequacy of Notice

Under Federal Rule of Civil Procedure 23(e), the Court "must direct notice in a reasonable manner to all class members who would be bound by the proposal." Fed. R. Civ. P. 23(e)(1)(B). Rule 23(c)(2)(B) requires "the best notice that is practicable under the circumstances, including individual notice to all members who can be identified through reasonable effort." The notice must "clearly and concisely state in plain, easily understood language" the nature of the action, the class definition, and the class members' right to exclude themselves from the class. *Id*. Although Rule 23 requires that reasonable efforts be made to reach all class members, it does not require that each class member actually receive notice. *See Silber v. Mabon*, 18 F.3d 1449, 1454 (9th Cir. 1994) (noting that the standard for class notice is "best practicable" notice, not "actually received" notice).

The Court finds that the notice plan previously approved by the Court was implemented and complies with Rule 23(c)(2)(B). *See In re PostMeds*, 2024 WL 4894293, at *7. After the Court preliminarily approved the Settlement Agreement, the settlement administrator "notified 98.9% of Class Members, including via 1,857,598 emailed notices and 105,651 mailed notices." Mot. at 16. Notice was also posted on the settlement website. As of May 28, 2025, 49,138 class members submitted claims; no class member filed an objection; and only 36 class members opted out. *Id.* at 17. In light of these facts, the Court finds that the parties have sufficiently provided the best practicable notice to the class members.

5

          **ii.    Fairness, Adequacy, and Reasonableness**

Having found the notice procedures adequate under Rule 23(e), the Court next considers whether the entire settlement comports with Rule 23(e).

In evaluating the motion for preliminary approval, the Court considered all three signs of collusion that the Ninth Circuit has identified. *See In re PostMeds*, 2024 WL 4894293, at *5; *see also McKinney-Drobnis*, 16 F.4th at 607–08. Nothing in the record changes the Court's preliminary conclusion regarding these factors. The proposed settlement is non-reversionary; notwithstanding any clear sailing provision regarding counsel's request for attorneys' fees, the majority of the monetary settlement will be distributed to class members; and the Court still carefully scrutinizes the request for attorneys' fees and service awards to ensure class members' interests are protected under the Agreement. The Court further finds that the other factors discussed in *McKinney-Drobnis* indicate that the proposed settlement is fair, adequate, and reasonable.

          **a.    Strength of Plaintiff's Case, Litigation Risk, and Risk of Maintaining Class Action Status**

Approval of a class settlement is appropriate when plaintiffs must overcome significant barriers to make their case. *See Chun-Hoon v. McKee Foods Corp.*, 716 F. Supp. 2d 848, 851 (N.D. Cal. 2010). Difficulties and risks in litigating weigh in favor of approving a class settlement. *See Rodriguez v. W. Publ'g Corp.*, 563 F.3d 948, 966 (9th Cir. 2009). "Generally, 'unless the settlement is clearly inadequate, its acceptance and approval are preferable to lengthy and expensive litigation with uncertain results.'" *Ching v. Siemens Indus., Inc.*, No. 11-cv-04838-MEJ, 2014 WL 2926210, at *4 (N.D. Cal. June 27, 2014) (citation omitted).

The Court finds that the amount offered in settlement is reasonable in light of the substantial risk that Plaintiffs would face by litigating the asserted data breach claims. Were this case to proceed, Plaintiffs acknowledge that their recovery on the merits "is far from certain" and "difficult to value" in part because only "a handful of [data breach] cases have achieved class certification." *In re PostMeds*, 2024 WL 4894293, at *7. *See In re Yahoo! Inc. Customer Data Sec. Breach Litig.*, No. 16-MD-02752-LHK, 2020 WL 4212811, at *35 (N.D. Cal. July 22, 2020),

*aff'd,* No. 20-16633, 2022 WL 2304236 (9th Cir. June 27, 2022) ("Plaintiffs correctly point out that class certification precedent in data breach cases is rare."). In reaching a settlement, Plaintiffs have ensured a favorable recovery for the class and avoided these risks. *See Rodriguez*, 563 F.3d at 966 (finding litigation risks weigh in favor of approving class settlement). Accordingly, these factors also weigh in favor of approving the settlement. *See Ching*, 2014 WL 2926210, at *4 (favoring settlement to protracted litigation).

### b. Settlement Amount

The Court previously concluded that the amount of the settlement—$7,500,000—was within the range of possible approval. *See In re PostMeds*, 2024 WL 4894293, at *6. Its opinion has not changed. Based on the facts in the record and the parties' arguments at the final fairness hearing, the Court finds that the settlement amount falls "within the range of reasonableness" in light of the risks and costs of litigation. *See Villanueva v. Morpho Detection, Inc.*, Case No. 13-cv-05390-HSG, 2016 WL 1070523, at *4 (N.D. Cal. Mar. 18, 2016) (citing cases).

Here, approximately 97% of claimants opted for a pro rata cash payment, and class counsel estimates that each claimant will receive approximately $107.34. Dkt. No. 115. The remaining 3% of claimants selected one year of Privacy Shield coverage, which is valued at $180. 33 individuals also submitted claims for out-of-pocket losses for a total of $14,910.65. *Id.* Were Plaintiffs to prevail at trial, class counsel estimates that the class's full recovery could range between "approximately $4,000,000 and $50,000,000" under a market value theory of damages. But because the typical measure of damages in data breach cases is not well established, these figures are highly speculative. Based on the uncertainty of future recovery, the Court agrees that the estimated average pro rata payment of $107.34 is reasonable, particularly as "[i]t is well-settled law that a cash settlement amounting to only a fraction of the potential recovery does not per se render the settlement inadequate or unfair." *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d 454, 459 (9th Cir. 2000) (citation omitted).[2] The Court finds that this recovery is significant,

---

[2] Other data privacy breach class actions have yielded comparable settlements. *See In re Google Plus Profile Litig.*, No. 518CV06164EJDVKD, 2021 WL 242887, at *1 (N.D. Cal. Jan. 25, 2021) (approving a non-reversionary $7,500,000 settlement fund for 160 million customers); *Perkins v.*

especially when weighed against the litigation risks in this case, such that this factor weighs in favor of approval.

### c. Extent of Discovery Completed and Stage of Proceedings

The Court finds that class counsel had sufficient information to make an informed decision about the merits of the case. *In re Mego Fin. Corp. Sec. Litig.*, 213 F.3d at 459. The parties settled after (1) a pre-suit investigation, (2) exchanging several hundred pages of informal discovery, and (3) substantive, written exchanges during a multi-week mediation process with a neutral mediator. Mot. at 22. Thus, the Court is persuaded that class counsel entered the settlement discussions with a thorough understanding of the factual and legal issues, so as to allow them to assess the likelihood of success on the merits. This factor weighs in favor of approval.

### d. Reaction of Class Members

The reaction of the class supports final approval. "[T]he absence of a large number of objections to a proposed class action settlement raises a strong presumption that the terms of a proposed class settlement action are favorable to the class members." *Nat'l Rural Telecomms. Coop. v. DIRECTV, Inc.*, 221 F.R.D. 523, 529 (C.D. Cal. 2004) (citations omitted); *see also In re Linkedin User Privacy Litig.*, 309 F.R.D. 573, 589 (N.D. Cal. 2015) ("A low number of opt-outs and objections in comparison to class size is typically a factor that supports settlement approval.") (citation omitted).

As discussed above, the settlement terms were publicized through a notice process that the Court deemed adequate. Out of approximately two million class members, only 36 requested exclusion from the settlement, and no class member objected. Mot. at 17; *see also Martin v. AmeriPride Servs., Inc.*, Case No. 08cv440–MMA (JMA), 2011 WL 2313604, at *7 (S.D. Cal. June 9, 2011) ("The absence of any objector strongly supports the fairness, reasonableness, and adequacy of the settlement.") (citations omitted). The Court finds that the positive reaction of the settlement class supports approval of the settlement.

---

*Linkedin Corp.*, No. 13-CV-04303-LHK, 2016 WL 613255, at *2 (N.D. Cal. Feb. 16, 2016) (approving a $13,000,000 settlement for a class of 20.8 million).

8

1    After considering and weighing the above factors, the Court finds that the Settlement
2 Agreement is fair, adequate, and reasonable, and that the settlement class members received
3 adequate notice. Accordingly, Plaintiffs' motion for final approval of the class action settlement,
4 Dkt. No. 112, is GRANTED.

## III.    MOTION FOR ATTORNEYS' FEES, COSTS, AND SERVICE AWARDS

In its unopposed motion and consistent with the Settlement Agreement, class counsel asks the Court to approve an award of $1,875,000 in attorneys' fees and $46,766.40 in litigation expenses. Dkt. No. 109 at 1. Counsel additionally requests service awards in the amount of $1,500 for the 24 class representatives, totaling $36,000. *Id.*

### A.    Legal Standard

Plaintiffs' counsel is entitled to an award of reasonable attorneys' fees and reimbursement of litigation expenses from the common fund they created for the benefit of a class. *See* Fed. R. Civ. P. 23(h); *Staton v. Boeing Co.*, 327 F.3d 938, 967 (9th Cir. 2003). The purpose of the "common fund" doctrine is to avoid unjust enrichment by requiring "those who benefit from the creation of the fund [to] share the wealth with the lawyers whose skill and effort helped create it." *In re Wash. Pub. Power Supply Sys. Sec. Litig.*, 19 F.3d 1291, 1300 (9th Cir. 1994) (citation omitted). The district court has discretion over the amount of attorney fees to award. *Vizcaino v. Microsoft Corp.*, 290 F.3d 1043, 1048 (9th Cir. 2002).

Under California law, the "percentage of fund method" is proper in class actions. *Laffitte v. Robert Half Int'l Inc.*, 1 Cal. 5th 480, 506 (2016). In common fund cases, 25% of the total pool is the "benchmark" for a reasonable fee award. *See, e.g.*, *In re Bluetooth*, 654 F.3d at 942. However, even where the benchmark is requested, the award "must be supported by findings that take into account all of the circumstances of the case." *Vizcaino*, 290 F.3d at 1048. These circumstances include: (1) the results achieved; (2) the risk of litigation; (3) the skill required and the quality of work; (4) the contingent nature of the fee and the financial burden carried by the plaintiff; and (5) awards made in similar cases. *See id.* at 1048–50.

In addition, "trial courts have discretion to conduct a lodestar cross-check on a percentage

9

fee." *Laffitte*, 1 Cal. 5th at 506. "The lodestar figure is calculated by multiplying the number of hours the prevailing party reasonably expended on the litigation (as supported by adequate documentation) by a reasonable hourly rate for the region and for the experience of the lawyer." *In re Bluetooth*, 654 F.3d at 941 (citing *Staton*, 327 F.3d at 965). Counsel is also entitled to recover "those out-of-pocket expenses that would normally be charged to a fee paying client." *Harris v. Marhoefer*, 24 F.3d 16, 19 (9th Cir. 1994) (internal quotations and citations omitted).

**B.     Discussion**

Class counsel here seeks $1,875,000 in attorneys' fees and $46,766.40 in litigation expenses, or $1,921,766.40 total. *See* Dkt. No. 109. Class counsel argue that their fees figure is appropriate under the "percentage of fund" method because the amount represents the benchmark 25% of the $7,500,000 settlement fund and is below the maximum amount permitted in the Settlement Agreement. However, even though class counsel requests the benchmark amount and PostMeds does not object, the Court may not simply issue a "[r]ubber-stamp approval" of the request. *Vizcaino*, 290 F.3d at 1052 (internal quotation marks and citation omitted). After analyzing the relevant factors and considering the overall circumstances of the case, the Court finds that class counsel's request is reasonable.

The first and most critical factor in assessing an attorneys' fee request is "the degree of success obtained." *Hensley v. Eckerhart*, 461 U.S. 424, 436 (1983); *see also Lowery v. Rhapsody Int'l, Inc.*, 75 F.4th 985, 988 (9th Cir. 2023) ("The touchstone for determining the reasonableness of attorneys' fees in a class action is the benefit to the class."). As discussed, class counsel obtained a significant recovery for the class by securing a $7,500,000 non-reversionary settlement fund and injunctive relief in the form of improved corporate data protection practices. Further, class members may request additional compensation for out-of-pocket losses. The Court agrees that this is a good result that confers benefits on the class. The fact that no members of the class objected and only 36 opted out buttresses this conclusion.

Plaintiffs' recovery also must be considered in light of the significant risks that they would face in further litigation. The risk that further litigation might result in Plaintiffs not recovering at

all is a significant factor in the award of fees. *See Vizcaino*, 290 F.3d at 1048. Counsel acknowledged that its theory of damages "remain[s] untested in a disputed class certification setting and unproven in front of a jury," Dkt. No. 109 at 12, and that there existed a substantial risk that the class would not be certified or would "lose on summary judgment or at a jury trial." *In re PostMeds*, 2024 WL 4894293, at *7. Given these challenges, this factor weighs in favor of awarding substantial fees. *See Vizcaino*, 290 F.3d at 1048.

Class Counsel also litigated this case skillfully and professionally. The risk that counsel took in litigating this case on a contingency basis for several years weighs in favor of a substantial attorneys' fee award. *See Vizcaino*, 290 F.3d at 1050. Counsel spent considerable time on this case without any certainty that they would be compensated. And counsel conducted an extensive investigation, engaged in substantial informal discovery, and negotiated a settlement that provided both monetary and injunctive relief.

The reasonableness of an award amounting to the benchmark 25% of the settlement fund is also confirmed by a lodestar cross-check. As a final check on the reasonableness of fees, the Court may compare the requested fees with counsel's bills under the lodestar analysis. *See, e.g., Vizcaino*, 290 F.3d at 1050 ("Calculation of the lodestar, which measures the lawyers' investment of time in the litigation, provides a check on the reasonableness of the percentage award."). The Court must "exclude from this initial fee calculation hours that were not 'reasonably expended.'" *Hensley*, 461 U.S. at 434 (citation omitted).

Here, counsel represents that it expended 1378.3 hours of time, for a total lodestar of $1,043,576.03. Dkt. No. 109 at 17. Counsel's hourly rates range from $700 to $1250 per hour for partners, $400 to $878 per hour for associates, and $225 to $515 per hour for paralegals. Dkt. No. 109-1. This is in line with prevailing rates in this district in similar cases for personnel of comparable experience, skill, and reputation. *See, e.g., Hefler v. Wells Fargo & Co.*, Case No. 16-cv-05479-JST, 2018 WL 6619983, at *14 (N.D. Cal. Dec. 18, 2018) (finding rates ranging from $650 to $1,250 for partners or senior counsel, $400 to $650 for associates, and $245 to $350 for paralegals to be reasonable); *In re Volkswagen "Clean Diesel" Mktg., Sales Pracs., & Prods. Liab. Litig.*, MDL No. 2672 CRB (JSC), 2017 WL 1047834, at *5 (N.D. Cal. Mar. 17, 2017)

11

1  (finding rates ranging from $275 to $1,600 for partners, $150 to $790 for associates, and $80 to $490 for paralegals to be reasonable).  Further, counsel's requested lodestar multiplier of 1.796 is consistent with the range of multipliers—1.0 to 4.0—that courts have approved in other class actions.  *See Smith v. Apple, Inc.*, No. 21-CV-09527-HSG, 2025 WL 1266927, at *8 (N.D. Cal. May 1, 2025) ("[I]n other class actions, courts have approved higher multipliers ranging from 1.0 to 4.0."); *Vizcaino*, 290 F.3d at 1051 n.6 (finding a range of 0.6 to 19.6 in a survey of 24 cases, with 83% in the 1.0 to 4.0 range and 54% in the 1.5 to 3.0 range).  Overall, the lodestar cross-check supports the reasonableness of class counsel's fee request.

An attorney who has created a common fund for the benefit of the class is also entitled to reimbursement of reasonable litigation costs from that fund.  *See Harris*, 24 F.3d 16 at 19.  Here, class counsel requests $46,766.40 in costs.  Mot. at 24.  To support the request, counsel summarized the major categories of expenses and associated costs for each, which include "Filing/Service/PHV/Court Fees" ($12,083.26); mediation expenses ($12,375.00); and travel ($9,704.65).  Dkt. No. 109-1 at 10.  The Court finds that counsel's requested expenses are reasonable, and accordingly GRANTS the request as to litigation costs.

The Court GRANTS the motion for attorneys' fees and costs, and awards to Class Counsel $1,875,000 in attorneys' fees and $46,766.40 in costs.

### C.  Service Awards

Lastly, counsel seeks services awards of $1,500 for each of the 24 class representatives.[3] Service awards are designed to "compensate class representatives for work done on behalf of the class, to make up for financial or reputational risk undertaken in bringing the action, and, sometimes, to recognize their willingness to act as a private attorney general."  *Rodriguez*, 563 F.3d at 958–59.  To evaluate the reasonableness of a proposed service award, courts look to factors such as the representative's service to the class, investment of time, and reputational harm. *See Staton*, 327 F.3d at 977.  Another important consideration is the proportionality between the service award and the range of class members' settlement awards.  *See, e.g., Burden v.*

---

[3] The large number of class representatives in this matter is a function of the case consolidation that precipitated this class action.

12

*SelectQuote Ins. Servs.*, No. C 10-5966 LB, 2013 WL 3988771, at *6 (N.D. Cal. Aug. 2, 2013) (declining to award a $10,000 service award where the requested award was nearly three times the largest amount paid to any class member).

Here, the Court finds that class counsel's request is reasonable because the awards are commensurate with Plaintiffs' service to the class and investment of time. Class counsel represents that the class representatives "investigat[ed] the matter prior to and after retaining their respective attorneys; participat[ed] in the vetting process implemented by Class Counsel; review[ed] and approv[ed] their original complaints and the Consolidated Complaint; collect[ed] documents and gather[ed] evidence; and correspond[ed] and communicat[ed] with counsel to monitor the progress of the litigation and the Settlement." Dkt. No. 109 at 19. This degree of involvement suggests a substantial contribution to the case. Further, no class members objected to the proposed service awards, which tends to indicate that the class is satisfied that their representatives did confer a benefit. Finally, the requested awards total $36,000, which is 0.48% of the settlement fund. This is well below the proportion of the fund that the Ninth Circuit has approved in some cases. *See Staton*, 327 F.3d at 948 (approving six percent of the settlement fund for service awards). Accordingly, the Court GRANTS the requested service award of $1,500 for the 24 settlement class representatives, for a total of $36,000.

## IV.   CONCLUSION

Accordingly, the Court **GRANTS** the motion for final approval of class action settlement, Dkt. No. 112, and **GRANTS** the motion for attorneys' fees, costs, and service awards, Dkt. No. 109. The Court awards attorneys' fees in the amount of $1,875,000 and litigation expenses in the amount of $46,766.40. The Court further awards $1,500 as a service award to each of the 24 settlement class representatives.

The parties and settlement administrator are directed to implement this Final Order and the Settlement Agreement in accordance with the terms of the Settlement Agreement. The parties are further directed to file a short stipulated proposed final judgment of two pages or less within 21 days from the date of this order. The judgment need not, and should not, repeat the analysis in this order.

1   Class counsel shall file a Post-Distribution Accounting within 21 days after the settlement checks become stale (or, if no checks are issued, all funds have been paid to class members pursuant to the Settlement Agreement).  In addition to the information contained in the Northern District of California's Procedural Guidance for Class Action Settlements, available at https://cand.uscourts.gov/forms/procedural-guidance-for-class-action-settlements/, the Post-Distribution Accounting shall discuss any significant or recurring concerns communicated by class members to the settlement administrator or counsel since final approval, any other issues in settlement administration since final approval, and how any concerns or issues were resolved.  Counsel is directed to summarize this information in an easy-to-read chart that allows for quick comparisons with other cases.  The parties shall post the Post-Distribution Accounting, including the easy-to-read chart, on the settlement website.  The Court may hold a hearing following submission of the parties' Post-Distribution Accounting.

The Court will withhold 10% of the attorney's fees granted in this Order until the Post-Distribution Accounting has been filed.  Class counsel shall file a proposed order releasing the remainder of the fees when they file their Post-Distribution Accounting.

**IT IS SO ORDERED.**

Dated:  June 17, 2025

HAYWOOD S. GILLIAM, JR.
United States District Judge